## UPHAM v. SUPERVISORS OF SUTTER COUNTY.

The Legislature can delegate the power to the voters of a county, to select a county seat therein.

The Legislature cannot delegate its general legislative powers, but it can authorize others to do those things which it cannot understandingly or advantageously do itself.

Admitting that the Legislature must directly select the places for holding the District Court, it does not follow that the right to select a county seat may not be conferred by law upon the people, as the Constitution does not require that the District Court shall be held at a county seat.

APPEAL from the District Court of the Tenth Judicial District, County of Sutter.

The plaintiff, a citizen and tax-payer of Sutter County, filed his bill, praying for an injunction restraining the supervisors from erecting buildings for county purposes in Yuba city, to which place the county seat had been ordered to be moved from Nicolaus, by a vote of the citizens of the county, at an election upon the question of the removal of the county seat, under the provisions of the act of 1856, conferring the necessary authority therefor.

The only question raised in this case, is the constitutionality of the act. The Court below entered judgment, dissolving a temporary injunction, granted on the commencement of this suit, and dismissing the bill. Plaintiff appealed.

*Long & Morrison* for Appellant.

The only question presented by the record in the case, is the constitutionality of the act for the location of the county seat of Sutter county. Laws of 1856, p. 142.

Section one of said act provides as follows:

"An election shall be held in the county of Sutter on the fifteenth day of May, 1856, to determine and locate the county seat of said county."

Section five provides that " after the returns shall have been made and canvassed, any one point or place having a number of votes equal to a majority of all the votes cast, shall be declared the county seat of said county," etc.

Section four, article eleven, of the Constitution of this State, reads as follows:

" The Legislature shall establish a system of county and town governments, which shall be as nearly uniform as possible throughout the State."

Section ten, article six, of the Constitution, reads as follows:

" The times and places of holding the terms of the Supreme Court and the general and special terms of the District Courts within the several districts, shall be provided for by law."

Now, we submit, in the first place, that the Constitution is imperative on the Legislature to fix the times and places of holding the District Courts within the several counties, and in pursuance of this provision of the Constitution, the act of this State requires every such Court to sit at the county seat. Passed May 19, 1853. Comp. Laws, p. 754, § 94.

The eleventh article, section fourth, of the Constitution, already cited, requires the Legislature to establish a system of county governments, and the chief and principal thing necessary in a county government is a county seat, and in pursuance of the requisitions of the Constitution the Legislature, by an act in 1851, fixed the county seat of Sutter at Nicolaus—where, we contend, it must remain until it is removed by direct enactment of the Legislature. Can the Legislature do that indirectly which

it is compelled to do directly. In other words, can the Legislature delegate its power to the vote of the people, or to any other tribunal? Certainly, if we are right in our construction of the Constitution, the Legislature has the only power to fix the county seat; and the act submitting the matter to a vote of the people of the county, is void; and therefore the erection by the defendants of the court-house and other public buildings at any other place than the county seat, to wit: the town of Nicolaus, is illegal; and they ought to have been enjoined from so doing. This same question has already been decided by this Court in the case of Dickey *v.* Hurlburt, 5 Cal., 343.

Whether we were right in our construction of the Constitution or not, as to the right of the Legislature to delegate the power to fix the county seats to any other tribunal, we are certainly right in contending that its act doing so in this case is void, because this Court has so decided in the case of Dickey *v.* Hurlburt, and whether that decision is correct or not it is the law of this case and must govern it; therefore we contend—

1. That the act of the Legislature of 1851, established the county seat of Sutter at Nicolaus.

2. That Nicolaus is the legally established county seat of Sutter.

3. That no power can remove it from Nicolaus, but an act of the Legislature, and that the Legislature cannot delegate that to others to do which it is bound to do itself.

4. And therefore that the act of the Legislature submitting the removal of the county seat of Sutter to the vote of the people, is unconstitutional and void.

5. That the defendants have no right to cause the erection of public buildings for said county at any other place than the legally established county seat; and, therefore, that the injunction ought to have been sustained, and that the Court erred in dissolving it.

*McDougall and Field* for Respondents.

The act submits the location to the vote of the people of the county, and it is urged that it is not within the constitutional power of the Legislature to make such submission.

This mode of locating county seats has obtained in all of the Western States, and has been adopted in this State, in numerous instances.

Its propriety was unquestioned, until the opinion expressed by Justice Heydenfeldt in Dickey *v.* Hurlburt, 5 Cal. R., 344.

This opinion was not necessary to the determination of that case, and the conclusion was placed on different grounds by the Chief Justice, in his opinion.

It is assumed, that this expression of opinion was based upon the provision of article sixth, section ten, of our Constitution.

"The times and places of holding the terms of the Supreme Court, and the general and special terms of the District Courts, within the several districts, shall be provided for by law."

To test this question directly, suppose there was no such provision in the Constitution, would it not be the duty of the Legislature to provide by law for the times and places of holding the District Courts? Is the obligation, duty, or authority of the Legislature changed by this directory (and not inhibitory,) provision?

If the construction is a sound one, that the Legislature, by direct act, must fix the "places," then they must fix the "times" also. It will then follow, that a Judge cannot appoint a general term, or hold a special term; that no Court could be held, except it commenced on the day expressly fixed by legislative enactment. This would be a new and startling proposition, and if it could be maintained, would avoid a large number of the judicial determinations of our Courts.

So, if the Constitution requires the place to be fixed by express enactment, the proceedings of a Court held at a different place, would be absolutely void. The inconvenience of such a construction, is a sufficient answer to it.

Contemporaneous legislative exposition is another sufficient answer, but neither of these answers are required, as the construction is against the plain language of the Constitution. Time and place "shall be provided for by law."

Has not a place been provided for by the act in question. To provide for, does not necessarily include the act of direct selection, and consequently does not necessarily require a direct selection; so that the Legislature provides for the selection, its duty is discharged.

If the Legislature is not prohibited by express terms, or necessary implication, from providing for the place of holding Courts, through an expression of the people of the district, the Legislature may thus provide.

The Legislature is not prohibited by express terms, or by necessary implication, and the conclusion follows.

It may be said, that the location of seats of justice, is a part of legislation, and as a legislative power, cannot be thus delegated. It may not be regarded as necessary to discuss this proposition, but as it may be presented and urged by the adverse counsel, we submit the following authority, which also bears upon the point already considered : In the People v. Reynolds, 5 Gilman, 1, the question was made, whether an act providing for the division of an old, and the organization of a new county, to take effect upon its approval by a popular vote, was constitutional. The case was very elaborately argued.

In conclusion, it is insisted—

1. The Constitution does not prohibit the Legislature from

thus providing for the place of holding the Courts, and therefore the Legislature may thus provide.

2. The fair construction of the Constitution authorizes the Legislature so to provide.

3. There is no reason to suppose or infer that the framers of the Constitution intended to deny this power to the Legislature.

4. The power is in the Legislature according to contemporaneous construction.

5. The power exercised is a convenient one, as a matter of general legislative expediency.

6. The rule contended for by the adverse party, would not only be inconvenient, but infinitely mischievous in its consequences.

TERRY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

The only question presented by the record in this case is the constitutionality of the act of 1856, to provide for the location of the county seat of Sutter county.

The act authorizes the question to be submitted to the voters of the county, and provides that any place, receiving a majority of all the votes cast, should be declared the county seat.

The appellant contends that under the provisions of the tenth section of article six of the Constitution, which directs that " the times and places of holding the terms of the Supreme Court, and the general and special terms of the District Courts, within the several districts, shall be provided for by law;" the Legislature must directly select the places of holding the terms of the District Courts, and the authority to do so cannot be delegated.

Admitting this construction to be correct, it does not necessarily follow that the right to locate county seats may not be conferred upon the people of the different counties; the Constitution does not require the terms of the Districts Courts to be held at the county seats, and we think it would be competent for the Legislature to fix upon other places for that purpose.

But we are not able to perceive any conflict between the Constitution and the act in question; we think that the places of holding Courts are "provided for by law." When it is enacted that the terms shall be held at the county seats of the different counties, providing for a place does not necessarily include its direct selection; if the mode of selection is prescribed by law, then the place is provided for. By the Constitution the Legislature is required to provide for many objects which cannot be effected by the direct action of the Legislature, and while the maxim *delegatus non potest delegare*, is undoubtedly true, the extent of its application to legislative bodies must depend upon the nature and design of the legislation and the means necessary to accomplish the design, as well as a knowledge of the powers

of the Legislature and the acts which may be done in the exercise of those powers. A question similar to the one under consideration arose in the case of the People *v.* Reynolds, 5 Gil., 1. The Court said :

" In determining what is legitimate and proper legislation, we feel warranted in looking at the past to see what kind of laws legislative bodies have been in the habit of passing. If we take the action of all past legislators in determining what may and should properly be done in the exercise of legislative powers, we see that while they are bound to make the laws, yet those laws need not be absolute, nor make every provision for doing that which they may authorize to be done ; while all must be done under their sanction, yet they need not do all, nor command all. A law may depend upon a future event, or contingency, for its taking effect ; and that contingency may arise from the voluntary act of others. Of this class are all laws creating private corporations, and a very large proportion of the laws creating public, or municipal corporations. The former must necessarily be submitted to the corporators for acceptance before they take effect ; and this has been very usually done with the latter, especially in the incorporation of towns and cities, and not unfrequently of counties ; and we have never heard it questioned before, that the Legislature might properly submit a law, creating either a private or a public corporation, to the acceptance of the corporators. All such laws are perfect and complete when they leave the hands of the Legislature, although a future event shall determine whether they can take effect or not. If we say that this is an unauthorized delegation of legistive power, we forget what is a proper and legitimate exercise of that power. If the saying be true, that the Legislature cannot delegate its powers, it is only so in its most general sense. We may well admit that the Legislature cannot delegate its general legislative authority ; still, it may authorize many things to be done by others which it might properly do itself. All power possessed by the Legislature is delegated to it by the people, and yet few will be found to insist that whatever the Legislature may do, it shall do, or else it shall go undone. To establish such a principle in a large State would be almost to destroy the government. The Legislature may grant ferry-licenses, or it may lay out roads and specify their metes and bounds, and yet, who will doubt that it may delegate this power to others, either by general or special laws ? So, also, it may pass all the laws requisite for the government of a particular city, or township, or school district, and who will doubt the propriety of its authorizing this to be done by the people within the limits of the city, town, or district, by their local representatives, or even directly ? This is making laws, and laws, too, of as binding efficacy as if passed directly by the Legislature. They are de-

pendent upon the Legislature for their vitality and force, through the act of incorporation, or law, under and by virtue of which they are made. Necessarily regarding many things, especially affecting local or individual interests, the Legislature may act either mediately or immediately. We see then, that while the Legislature may not divest itself of its proper functions, or delegate its general legislative authority, it may still authorize others to do those things which it might properly, yet cannot understandingly, or advantageously, do itself. Without this power, legislation would become oppressive, and yet imbecile. Local laws almost universally call into action, to a greater or less extent, the agency and discretion, either of the people or individuals, to accomplish in detail what is authorized, or required, in general terms. The object to be accomplished, or the thing permitted, may be specified, and the rest left to the agency of others, with better opportunities of accomplishing the object, or doing the thing understandingly."

The reasoning of this opinion is, we think, conclusive on the questions here presented. The case of Dickey v. Hurlburt, relied on by appellant, is not in point, the question in that case was, whether a judicial officer could exercise functions properly belonging to another department of the government.

Judgment affirmed.