## PATRICK CREIGHTON *v.* JOHN S. MANSON.

STREET IMPROVEMENTS BY A MUNICIPAL GOVERNMENT. — The municipal Government of a city, in causing street improvements to be made, acts under the authority conferred upon it by the Legislature, and is subject to all the constitutional limitations and restraints imposed on the Legislature, and has no other or greater power than is and lawfully may be conferred on it by the legislative act.

ASSESSMENT NOT A TAX. — An assessment levied by a municipal Government upon lots adjacent to a street to pay for improvements made on the street, if held to be a tax, cannot be maintained, because it lacks the constitutional requirement of equality and uniformity.

STREET IMPROVEMENTS IN A CITY. — The Legislature has not the power to charge the persons who reside on a street in a city with the expenses of an improvement on that street.

CONSOLIDATION ACT AS TO STREET IMPROVEMENTS.—The Legislature has not, by the Consolidation Act for the government of San Francisco, and the amendments thereto prior to 1862, done anything more than to provide for a lien upon lots adjacent to a street for improvements made on the street, and define the manner

in which the same may be enforced. These Acts do not create any personal lia-
bility on the part of the owners of such lots for such improvements, nor does the
amendment of 1862 create any personal liability for work done or to be done under
contracts entered into before its passage.

ASSESSMENT ON LOT FOR IMPROVEMENT OF STREET.—If, under the power to take pri-
vate property for public uses upon making a just compensation therefor, the Legis-
lature possesses the power to levy an assessment upon lots in a city adjacent to a
street to pay for improvements made on the street, the assessment cannot exceed
the value of the benefit conferred on the lot or its owner by the improvement, and
can be enforced only by proceedings to subject the lot to a sale in discharge of the
lien.

SAME. — Such assessment cannot be laid on the lot or its owner when the lot has
received only an injury by the work on the street for which the assessment is levied.

STATUTE CREATING A LIEN ON A LOT FOR STREET ASSESSMENTS.—A statute creating
a lien upon a lot in a city to secure the payment of an assessment levied on the
lot for improvements in the street adjacent, must be strictly construed, and the
proceedings authorized by the statute to create and enforce the lien must be fol-
lowed precisely as directed, or the whole proceeding will be void.

RESOLUTION TO GRADE STREET IN SAN FRANCISCO. — A resolution of the Board of
Supervisors of the City and County of San Francisco of intention to grade a street,
must be presented to the President of the Board for his approval; and if not so
presented, no lien can be enforced on the lots adjacent to the street for assessments
for grading the same.

HOW MUNICIPAL LEGISLATURE CAN ACT.—The legislative department of a city Gov-
ernment can act only through the medium of an ordinance, but the ordinance may
be in the form of a resolution, or be preceded by the words "Be it ordained," etc.

APPEAL from the District Court, Fourth Judicial District,
City and County of San Francisco.

The defendant appealed from the judgment.
The other facts are stated in the opinion of the Court.

*Haight & Pierson*, for Appellant.

We know of no precedent in legislation or in judicial deci-
sions under a Constitution like ours for creating a personal
liability against an owner for an improvement of this kind
over and above the value of the lot. The usual remedy is to
assess the expense of the work upon the property responsible
for it, without loading the owner with a heavy penalty over
and above the value of his lot.

The adjudications on questions arising heretofore under
similar laws do not control the present case, because no simi-
lar one has ever been decided.

The facts of this case being radically different from those of any previous one, present a different question for determination.

A law making one responsible without his knowledge or assent for an expenditure which results in impairing or destroying the value of his property, should manifestly receive a strict construction, and a strict compliance should be exacted in favor of the latter. It is a question not of moral or equitable obligation, but of naked technical legal liability.

The cases in which this principle has been decided are collected in the second chapter of Blackwell on Tax Titles, page 43, and following. (See, also, *Sharp* v. *Speir*, 4 Hill, 76; *Sharp* v. *Johnson*, 4 Hill, 92.)

Most of the cases referred to in Blackwell are those of a sale of land for taxes, and the rules applicable to such sales are too familiar to need comment.

There is an obvious duty to pay taxes, but no such obvious duty to incur a heavy expense in making a highway for the use of the population, resident and transient, of a great city. The rule is a most salutary one in the case of general taxes, as universal experience demonstrates, and should not be relaxed, but rather made more stringent; much more in the case of a special and onerous exaction, no argument is needed to show that the most severe and stringent rule should be adopted and the most exact compliance required. In such statutes nothing is left to the discretion of the officer. None of the provisions are directory, which can be obeyed or not without affecting the validity of the proceeding. Every step required to be taken by the statute must be taken, or the defendant will not be liable.

Whether the proceeding is one that creates a liability for a definite sum of money, or deprives a man of a piece of land equal in value, does not change the principle. Whether a man is made liable for one thousand dollars, or loses a piece of property of the value of one thousand dollars, the effect and rule of construction in both cases are the same.

Some have argued that a statute which authorizes taking

from a man a sum of money without his consent, is not to
be construed so strictly as one which takes from him a parcel
of land of equal value. The bare statement of the proposition
refutes it sufficiently.

The fact that in the case of a pecuniary liability a suit has
to be brought is of no importance, if the defendant is not at
liberty to require on the part of the plaintiff a strict compli-
ance with the law. Of what advantage in such a case is the
privilege of a defense, if the defendant cannot avail himself of
omissions and failures to comply? The defendant cannot go
outside of the statute to show equities in his defense. No
matter how inequitable the plaintiff's claim may be, if the
law has been pursued, there is no remedy. The plaintiff has
simply to say, "*ita lex scripta est.*" He cannot complain,
therefore, of being tried by the same rule which he invokes.

The first objection is that no legal or official action was
taken by the Board of Supervisors to cause notice of their
intention to be given. Section sixty-eight of the Consolida-
tion Bill, (Stats. of 1856, p. 164,) provides that " every *ordi-
nance* or *resolution* of the Board of Supervisors, providing for
any specific improvement, and for laying a tax or assessment,
shall, after its introduction, be published five days;" and
" every such ordinance, after the same shall pass the Board,
shall, *before it takes effect, be presented to the President for
approval.* If he approve he shall sign it; if not he shall
return it," etc. " If at any stated meeting thereafter, two
thirds of all the members elected to the Board vote for such
*ordinance* or *resolution*, it shall, *despite the objections of the
President, become valid.*"

Section forty provides that whenever the Board shall deter-
mine to grade any street, they shall cause notice of their inten-
tion to be published for the period of ten days, etc.

The resolution of intention is the foundation of the whole
proceeding—the first step upon which the others rest. It
provides for a *specific improvement*, and for laying an assess-
ment; it must be presented to the President for his approval;
without his approval it is no more the official act of the Board

of Supervisors than if it had been signed by a majority of the members not convened in session as a Board. Without the signature of the President it lacks the very element required by the statute.

*Daniel Rogers*, for Respondent.

Appellant's counsel contend that the assessment is void and unconstitutional, inasmuch as it conflicts with that part of section eight of Article I of the Constitution, which declares " nor shall private property be taken for public use without just compensation." It is also contended that the appellant cannot be made to pay an amount over the assessed value of the property. These positions are untenable. The Superintendent, in the execution of the contract, is the agent of the owner as well as the city. The principle involved is the same as laying a tax; upon failure to pay in either case, the property is liable to sale. The tax is for the benefit of the public, and yet it cannot be urged that upon a sale for taxes property is taken for public use without compensation. The improvement for which this suit is brought, is, to some extent, of general benefit—yet more chiefly for the benefit of the immediate neighborhood. The benefit is immediately to adjacent property holders, and only indirectly to the city. (*Argenti* v. *City of San Francisco*, 16 Cal. 283.)

This Court has already decided that assessments for street repairs are constitutional, without respect to the amount assessed being disproportionate to the assessed value of the property. (*Hart* v. *Gaven*, 12 Cal. 477.)

*C. H. Parker*, also for Respondent.

The first objection is based upon the assumption that the *notice of intention* falls within the provisions of section sixty-eight. This is a mistake. The *modus operandi* is this: The Superintendent, whose duty it is to see what street work ought to be done, recommends to the Board that a street should be graded. At the next meeting, the Board, acting

upon this information, passes a resolution stating that it is their *intention* to *order* (or *provide* for) said grading. This *notice* of an *intention* is a *feeler* thrown out by the Board to ascertain the wishes of the parties interested, and to enable them to protest, if they choose, against *"providing"* for this *"specific improvement."* Now, an *intention* to provide, is not *actually providing*, any more than the announcement of an *intention* to go to Sacramento necessarily involved the *actual going* to Sacramento. The Board may never proceed any further in the matter; if so, it cannot be said that they have *actually provided* for said specific improvement. It is one of a series of resolutions—a notice—but it is not *the* resolution of the series *"providing* for any specific improvement." After ten days publication, there being no objection to the grading of the street—all things being ready—the Board pass a resolution *"providing"* for the grading. This is the important resolution : and for this the old law required the formalities of section sixty-eight to make it effective. (The law of 1862 has dispensed with all this formality, so far as street improvements are concerned.)

It was never understood that the resolution of intention was within section sixty-eight, and it was seriously doubted whether the second resolution was within it. (9 Paige, Ch. R. p. 24.) Section sixty-eight was intended to cover only those resolutions which were not preceded by a *prior resolution* of intention.


By the Court, RHODES, J.

This action is brought to recover of the defendant the amount of the assessment levied upon a lot in San Francisco, by the Superintendent of Public Streets and Highways, to pay the plaintiff, as the contractor, for his services in grading Union street; also to enforce the assessment as a lien upon the lot.

The defendant was the owner of the lot when the services were performed, and still remains the owner. Previous to the making of the contract for the grading of the street between

the Superintendent and the contractor, the lot was appraised, for revenue purposes, at fourteen hundred dollars. The assessment amounts to nineteen hundred and eighty-nine dollars and fifty-four cents. The lot is rendered worthless in consequence of the grading of the street. The Court gave judgment against the defendant for the amount of the assessment, and decreed that the plaintiff should have a lien on said lot to the amount of said judgment.

The construction and improvement of streets are public works, and are intended for the benefit of the public at large; and though the presumption may be indulged in that the larger portion of the benefit inures to the owner of the contiguous property, yet it is but a presumption which in a large proportion of cases is not true, and it remains but a presumption that is liable to be rebutted by proof of the truth. The streets, although public works and designed for public use, are not always constructed at public expense, but more generally they are graded and improved under the direction of the municipal authorities, at the expense of the contiguous lots and lands. The municipal governments, in causing street improvements to be made, act under the authority conferred upon them by the Legislature, the authority being a portion of the sovereignty delegated to them for the purposes of municipal government.

The municipal government, in the exercise of the authority thus conferred, is subject to all the constitutional restraints and limitations imposed on the Legislature, and has no other or greater power than is and lawfully may be conferred on it by the legislative act. It can make no order for the improvement of a street, and make no provision for the payment of the expenses, that the Legislature might not do if it should act directly in the matter. When the improvement has been made, an assessment is levied upon the adjacent real estate by the city government, in such manner as the Legislature has directed, to pay for the expenses of the work. Is the right to levy the assessment thus conferred upon the city a portion of the power possessed by the Legislature of

raising money for public purposes by taxation, or does it rather fall within the right of eminent domain? If not derived from one of these, it is difficult if not impossible to refer it to any source of legislative power under the Constitution. It appears to us very clearly that the assessment is not a tax, and though the authorities are not uniform on this point, we think the opinion of Mr. Chief Justice Bronson in *Sharp* v. *Spier*, 4 Hill, 76, and in *Sharp* v. *Johnson*, Id. 92, unanswerable and decisive against its being regarded as a tax. (See also the able opinion in *People ex rel. Post* v. *Mayor, etc., of Brooklyn*, 6 Barb. 209 ; and *Municipality No.* 2 v. *White*, 9 Louis. Ann. 446.) If held to be a tax, it would be in violation of the cardinal rule of the Constitution which requires taxation to be equal and uniform. The Legislature may lawfully divide the State into districts, as counties, townships, cities, etc., and may provide that the authorities of each district may raise money for local purposes by taxation, and the amount may vary in the several districts, but the tax must be equal and uniform upon the persons and property subject to taxation in each district. If the assessment for street improvements is a tax it would be no more competent for the city government to levy the entire amount of it upon the property contiguous to the street that had been improved than to levy upon the same property the whole amount of the expenses of any branch of the municipal Government.

It is also very difficult to uphold the power of levying the assessment on the adjacent property upon the theory that it is parcel of the right of eminent domain, transferred by the Legislature to the subordinate authority. When private property, whether lands or personal property, or the value of either of them, is taken for public use, just compensation must be made therefor. In order to overcome this apparently unsurmountable difficulty, it has been often held that the owner of the property should be deemed to be compensated by the benefits in the way of an increase of value that the property has received by the adjacent improvements. We do not under-

take to say whether such benefits, as fallacious as they are in many cases, and of which this case is a striking instance, do or do not constitute a "just compensation," according to the requirements of the Constitution; but for the purposes of this case, we admit that such benefits may satisfy the constitutional demand. The cases sustaining this view, generally, but not uniformly, hold that this benefit resulting from the street improvements attaches itself to the adjacent property, and does not directly accrue to the person who may happen to be the owner. The owner, as an individual disconnected from the property, receives no other or greater benefit from the making of the improvement than each person within the corporate limits. The doctrine that a limited number of persons, who may happen to own property in a given locality within the city, shall be chargeable personally with the expenses of a public improvement, is not in accordance with the presumption on which those cases proceed, and cannot be sustained upon any theory of the constitutional authority of the Legislature—neither as included in the taxing power nor the right of eminent domain, nor, indeed, upon any theory except that of the absolute power of the legislative department of the Government—for it would be merely the exercise of the power of taxation freed from the constitutional limitations of equality and uniformity, and would be as odious in all its features as a forced loan, without the justification of imperious necessity.

When expenses for the improvements have been incurred by the city, or some one acting under her authority, it has been usual to give a lien upon the adjacent property, or to authorize it to be sold for the payment of those expenses, or some part of them. This brings us to the inquiry whether, by the provisions of the San Francisco Consolidation Act, and the amendments thereto, the Legislature has in fact done anything more than to provide for a lien upon the adjacent property and define the manner in which the same may be enforced. Sections forty-two, forty-seven, and other sections of the Act of 1856, provide that the expenses of the several

kinds of work shall be borne by the adjoining property and shall become a lien thereon; and the amendatory Act of 1859, which was in force when the contract in this case was let, in corresponding sections, makes similar provisions.

The Act of 1862, which was in force when the work under the contract was completed, in the eighth section prescribes in detail the property that shall be liable for the payment of the different kinds of improvements; and a subsequent section provides that upon the doing of certain official acts the amount assessed upon each parcel of property shall be and constitute a lien thereon. It is apparent from these provisions of the Consolidation Act, that it was intended that the expenses of each street improvement should be borne by the contiguous lots; and there is no clause in the Act of 1859, or of the Act of 1862, which, either directly or by necessary implication, charges the owner of the lot personally with those expenses that are required to be assessed upon the lot, unless that is done by those provisions of the Act prescribing the mode of procedure for the collection of the assessment. No cause of action accrued in any manner to the plaintiff as against the defendant, to recover the assessment until after the Act of 1862 took effect; for the work was not then completed, and the several official acts had not then been performed which were requisite before he could sue the defendant. The plaintiff, in his own right, acquired no cause of action against the defendant for the services performed, for there was no contract, express or implied, between the parties, but the right of action was transferred to him by a sort of legislative assignment, and when transferred to him he took it subject to the laws then in force, so far as his remedy against the defendant was concerned, though the contract with the Superintendent may have been made under a former Act.

It is provided in section twenty-nine of that Act that "All proceedings which may have been taken under the law, for which this law is a substitute, and which are pending at the time this law shall take effect, may be continued and completed

under this law ;" and it is further provided by section thirteen
that " In all suits now pending or hereafter to be brought to
recover street assessments, the proceedings therein shall be
governed and regulated by the provisions of this Act."   Sec-
tion thirteen of the Act of 1862, which is the only section of
the Act authorizing the contractor to sue the lot holder to
recover the assessment made as in this case, provides that the
contractor after thirty-five days from the date of the warrant
may sue " the owner of the land, lots or portion of lots assessed
on the day of the date of the recording of the warrant, assess-
ment and diagrams, or on any day thereafter during the con-
tinuance of the lien of said assessment, and recover the amount
of said assessment remaining due and unpaid."   The language
and plain meaning of the section includes not only the person
who owned the lot at the date of the recording of the warrant,
assessment and diagrams as liable to be sued, but also each
person successively who may thereafter and during the contin-
uance of the lien be the owner.   The statute does not provide
a different remedy against the subsequent owner from that
given against the owner at the time the lien attached, but it
affords the same remedy in every case.   The action is to be
brought, not in the county in which the defendant resides, but
in the county in which the lot is situated.   The form of the
judgment is also prescribed, the Court being empowered to
" adjudge and decree a lien against the premises assessed and
to order such premises to be sold on execution, as in other
cases of sale of real estate by process of said Courts." . The
proceedings authorized to be taken in the case indicate that it
was intended that the action should be an action *in rem* to
enforce the payment of the assessment by a decree for the sale
of the lot, and in proceedings of that character it was proper
that the person owning the lot charged with the lien at the
commencement of the action should be made a defendant to
the action.

No one would contend that a subsequent purchaser of the
lot was personally liable for the assessment, or that in enforc-
ing the lien a personal judgment could be rendered against

him. And it will be observed that no provision is made that judgment against the person owning the lot when the assessment was made may be taken in the action brought against the subsequent owner. It is beyond all doubt that the Legislature intended to charge the lot with the assessment, to give a lien upon the lot to secure the payment of the assessment, and to authorize the Courts to enforce the lien by ordering a sale of the property, but not to give any recourse against the owner or make him personally liable. If there was any doubt upon this point, we would be justified, and indeed required, to give the owner of the lot the benefit of the doubt, because, under the well established rules of construction, it is our duty to so interpret the Act, if its terms will admit of it, that it shall harmonize with the recognized rules of law and rights of property. It is not to be presumed, unless the terms of the Act imperatively require it, that the Legislature intended that under this Act such a wrong might be perpetrated as would result if the personal judgment against the defendant could be maintained for the recovery of the assessment, levied to pay for work performed not at his request, but against his objections, and when by the work, as performed, the value of his property was wholly destroyed.

It is proper to mention another principle, which we think is sufficient to control the whole case. If it is admitted that the benefits received by the property or its owner, by means of the improvements, will satisfy the constitutional requirement of a just compensation for the assessment levied upon the property, that theory is subject to the rule that the assessment must not exceed the value of the benefit conferred by the making of the improvement. This doctrine is laid down in *Matter of Fourth Avenue,* 3 Wend. 452 ; *Matter of Albany Street,* 11 Wend. 149 ; *Matter of Canal Street,* 11 Wend. 154 ; *Matter of William and Anthony Streets,* 19 Wend. 678 ; *Matter of Flatbush Avenue,* 1 Barb. 286 ; and is affirmed in *Canal Bank of Albany* v. *Mayor, etc., of Albany,* 19 Wend. 244 ; and *People ex rel. Post* v. *Mayor, etc., of Brooklyn,* 6 Barb, 209 ; and we think the doctrine is correct and applicable to cases

like the one at bar. And certainly an assessment should not be laid either upon the property or the owner, where instead of a benefit to the property the owner has received only an injury by the work on account of which it is proposed to levy the assessment.

Judgment reversed and the cause remanded for further proceedings.


SAWYER, J., concurring specially.

I dissent from some of the views expressed in the opinion, but concur in the reversal of the judgment.


By the Court, RHODES, J., on petition for rehearing.

We have carefully considered the respondent's elaborate petition for a rehearing, but in the view we take of the case, a decision of several of the points therein made is unnecessary.

As suggested by the learned counsel, it may be far more convenient, in enforcing the payment of street assessments, to be permitted to take a personal judgment than a judgment *in rem* only, but that consideration would certainly not be seriously urged as a sufficient reason for allowing a judgment to be taken which was clearly in conflict with constitutional law.

If it is said that in the absence of a personal liability of the lot owner for the assessment, the contractor is liable to lose that portion of the assessment which exceeds the value of the lot presumed to be benefited by the improvement, for which the assessment was made, it may be answered that the same result might happen if the lot was the only property possessed by the lot owner; and further, that it is the duty of the contractor to see that some sufficient responsibility exists for the payment of his work; that is to say, to ascertain whether the lot is of value enough to bear the burden proposed to be imposed upon it for its improvement. It is as unquestionably his duty to see that ample liability exists for his payment as it is to know that a valid ordinance passed

authorizing the work to be done, for he is dealing with officers vested with special and limited authority, and he must bear the consequence of his own errors and negligence.

We are earnestly pressed by the learned counsel for the respondent to grant a rehearing, because the case cannot be fully argued on briefs, as the law is special and complicated, presenting many points for discussion ; but if our view of the situation and rights of the parties is correct, the points arising out of the details—the machinery—of the Act are immaterial to the decision of the leading question in the present action.

We are referred to section seventeen of the Act of 1862 as decisive of the question of the personal liability of the lot owner in favor of the contractor. It will be noticed that the contract was made under laws in force prior to the passage of the Act of 1862, and what we said in respect to the question whether a personal liability for the assessment was given by the statute, had relation, not to a case that might arise out of a contract executed under the Act of 1862, but to the case then before us growing out of a contract made under laws in force anterior to the passage of that Act. Although the Act of 1862 purports to create a personal liability, it does not in terms, nor by necessary implication, have a retrospective operation so as to create a personal liability for work performed or to be performed under contracts made before the passage of the Act. The Legislature, by the Act, granted to parties proceeding under the statute then in force the benefit of the remedies provided in that Act; but the grant of a new remedy—a mere mode of procedure to maintain an existing right—which is clearly within the power of the Legislature, is very different in substance and effect from the grant of a new or additional liability for services performed or being performed under an existing contract. We do not now, nor have we in the opinion already delivered, attempted to controvert the position of the respondent—that the Legislature have in express terms, in the seventeenth section of the Act of 1862, declared that the lot owner shall be personally liable for the payment of the assessment, but we hold that such liability can attach, if at all, only

to contracts made after the passage of the Act, and when we said that the Legislature did not intend that the lot owner should be personally liable, we had reference to an assessment for work done under a contract made before, not after, the passage of that Act.

The principles upon which we rely for a solution of the principal questions in this case, and the course of reasoning adopted, may tend to show the invalidity of the personal liability clause in section seventeen of the Act of 1862, but the question of the validity of that clause is not in issue, because it has no application to the present case.

An assessment for the improvement of a street, levied solely upon the owners of the lots lying adjacent to the street that has been improved as a public street, and which is authorized by law to be collected from the lot owners as a personal charge, without regard to the benefit actually accruing to them by means of the improvement, is a tax, and as such is obnoxious to the objection that it violates the constitutional requirement of equality and uniformity.

We rest our opinion mainly on the proposition that street assessments, of the form of the present one, can be maintained, if at all, only on the theory that the power to levy such assessments upon the lots adjacent to the street that has been improved under the direction of the city government is parcel of the right of eminent domain transferred by the Legislature to the city; and that to maintain them even on that theory, it must be assumed that the benefits that the lots have received from the improvements constitute a "just compensation" for the lien cast upon them. The requirement of a just compensation to be made for private property taken for public use attends every exercise of the power by an authority subordinate to the sovereign power of the State, as well as by the State itself, and applies as well where the value or a part of the value of the property is taken by being subjected to the payment of a sum of money, as where the property itself, or some interest therein, is directly taken for public use. As a necessary consequence of this doctrine, the amount of the

charge or lien imposed upon the property cannot exceed the value of the property, and the payment of the amount can be enforced only by proceedings to subject the lot to sale in discharge of the lien. The personal judgment rendered against the appellant is therefore erroneous.

The validity of the lien thus asserted, and of the judgment ordering the lot to be sold, must be ascertained mainly by an examination of the acts and proceedings required by law to be done and had by the officers of the city and the contractor previous to the time at which the alleged right of action accrued to the contractor. We previously omitted to consider this branch of the case because, the parties admitting the lot to be of no value, we deemed it unnecessary to ascertain whether the proceedings requisite to charge the lot with the payment of the assessment had been taken according to law, but as the contractor is entitled to his judgment, without regard to the value of the lot, if the proceedings have been regular, it becomes necessary to pass also upon the judgment ordering the lot to be sold.

Upon this question the appellant maintains that when summary proceedings are authorized by statute, the effect of which is to divest or affect rights of property, the statute is to be strictly construed, and that the power conferred must be executed precisely as given, and that any departure vitiates the whole proceeding. This doctrine is well expressed in the axiomatic language of Mr. Justice Bronson in *Sharp* v. *Spier*, 4 Hill, 76 : "Every statute authority in derogation of the common law to divest the title of one and transfer it to another must be strictly pursued or the title will not pass." We expressed our concurrence in this principle in *Curran* v. *Shattuck*, 24 Cal. 427, as applicable to proceedings to acquire the right of way for a public road, and proceedings as in this case to acquire a lien for the payment of a street assessment are within the reasons of the rule.

We shall notice but one of the objections made by the appellant to the proceedings, and that is, that the resolution of intention of the Board of Supervisors to grade the street in question,

was not presented to the President of the Board for approval according to the requirements of section sixty-eight of the Consolidation Act. It is a general rule that the legislative department of a city government can act only through the medium of an ordinance, unless the organic law specially provides another mode. The instrument containing the expression of the legislative will need not necessarily be in the usual form of a municipal ordinance and be preceded by the words " Be it ordained," etc., but it may properly be, as in this case, in the form of a resolution, but whatever its form, it amounts in substance to an ordinance, and must be passed in the mode prescribed for the passage of ordinances.

It is provided in section forty of the Consolidation Act, that the Board may order a street to be graded after notice of their intention has been published in a daily newspaper for the period of ten days, unless the owners of a specified proportion of the lands or lots bounded by the street shall make written objection thereto. The declaration of intention is the fundamental act of the whole proceeding to grade the street, and in the absence of the declaration of intention manifested by an ordinance or some act that is its equivalent in substance and effect, though differing from it in form, the whole proceedings must fail of compulsory effect. The manner of making the declaration of intention is not specified in the Act, but the power to make the declaration is conferred upon the Board and expressed in the same general terms as in the preceding and subsequent sections, is the authority to lay out a street or to order a street to be graded, and it is impossible to see why an ordinance or a resolution is not as requisite in declaring the intention to grade the street, as in ordering the street to be graded. If it is said that the resolution of intention is not comprised within the meaning of the words " every ordinance or resolution of the Board of Supervisors providing for any specific improvement," as used in section sixty-eight, it may be answered that the declaration of intention, whatever may be its form, is a legislative act, and as such must be passed in

the mode prescribed by law, and for that purpose it must be presented to the President of the Board for his approval. Rehearing denied.

SAWYER, J. concurring specially.

I concurr in denying a rehearing for reasons different from those expressed in the opinion. I also dissent from the construction given in the opinion to sections forty and sixty-eight of the Consolidation Act.