[S. F. Nos. 7270, 7272, 7273.   In Bank.—July 22, 1915.]

## C. E. HOPPING, Petitioner, v. THE COUNCIL OF THE CITY OF RICHMOND et al. Respondents.

MUNICIPAL CORPORATION—CITY OF RICHMOND—POWER OF REFERENDUM. The people of the city of Richmond derive the power of referendum from its charter adopted and approved by the legislature of 1909, and from the amendment of section 1, article IV of the constitution, adopted October 10, 1911.

ID.—CONSTRUCTION OF CONSTITUTION—POWER OF LEGISLATURE—REFERENDUM.—The provisions of article IV, sec. 1, of the state constitution, as amended October 10, 1911, reserving to the people the power of referendum and providing that except as to certain enumerated acts the power may be invoked on "any act or section, or part of any act, passed by the legislature," clearly implies that, with the exceptions noted, the referendum does not apply to acts of legislative power which may be taken by joint resolution, and that it may be invoked upon all acts which must be passed in the form of a statute. At least it may be said that it applies to all statutes enacting measures in which all citizens of the entire state are interested.

ID.—INITIATIVE AND REFERENDUM—DESCRIPTION OF POWERS.—The final clause of section 1, article IV of the constitution reserving the powers of initiative and referendum to the people of cities, refers back to the opening clause for a description of the powers so reserved, and applies only to acts of the city council, or other legislative body of the particular city, which are exercises of its legislative power.

ID.—POWERS OF MUNICIPALITIES—LEGISLATIVE AND EXECUTIVE POWERS. Executive powers although committed to and exercised by the city council in the form of an ordinance or resolution are not subject to the power of the referendum.

ID.—CITY CHARTERS—CONSTRUCTION OF CONSTITUTION—REFERENDUM.— The declaration of the constitution that its provisions do not affect or limit the referendum power reserved to the people of any city by its charter, does not limit the constitutional reservation nor enlarge those reserved by such charter. The two reservations are thereby made independent of each other. The constitutional reservation goes to the full extent expressed by its language. If the charter differs from the constitution in any respect it does not thereby diminish the power reserved by the constitution. On the other hand, if the power reserved by the charter exceed those reserved in the constitution the effect of the charter would be to give to the people the additional powers there described.

ID.—CHARTER OF RICHMOND—REFERENDUM—APPLICABILITY TO ORDINANCES AND RESOLUTIONS—EXERCISING LEGISLATIVE POWER.—

The provisions of the charter of the city of Richmond with respect to the referendum power make it applicable to all ordinances and resolutions which constitute an exercise of legislative power, but not to those constituting an exercise of executive power.

ID.—RESOLUTIONS FOR ERECTION OF CITY HALL—ACCEPTANCE OF PROPERTY AND AGREEMENT TO OCCUPY AND PAY RENTAL—LEGISLATIVE ACTS.—A resolution of the council of the city of Richmond accepting a proposition of a company offering to donate a certain sum toward the erection of a new city hall on ground given by said company to the city for that purpose on condition that the city appropriate at least an equal amount, and that when the building is completed it shall be accepted and occupied as a city hall, and a resolution for the acceptance of a deed to the property, and a resolution for the acceptance and execution of an agreement between the city and the company providing for the immediate erection of the city hall and occupation of the same as such, and payment of a certain rental until a certain total sum has been paid, whereupon the building shall be conveyed to the city, constitute acts upon the part of the city council involving the exercise of legislative power, and not administrative or executive power, and therefore the referendum provisions of the charter of the city are applicable to them, and it is the duty of the city council upon proper proceedings therefor to call a special election to submit the resolutions to the voters for their approval or rejection.

ID.—EXECUTIVE AND ADMINISTRATIVE ACTS—WHAT CONSTITUTES.—Contracts made by a local governmental body, having both legislative and executive powers, for the purchase of supplies for use in the current administration of governmental affairs, such as current printing expenses, gas, water, or electricity for current lighting of city offices or streets and furniture, and fitting of such offices, are to be deemed as acts of administration and classed among those governmental powers properly assigned to the executive department. They comprise acts necessary to be done to carry out legislative policies and purposes already declared by such legislative body, or devolve upon it by the organic law of its existence.

ID.—DIVISION OF LEGISLATIVE POWER—APPLICATION OF INITIATIVE AND REFERENDUM.—The contention that considerations of public convenience and efficiency in administration demand that legislative powers be divided into two classes, to one of which alone the initiative and referendum were intended to be applicable, while the other is not within the scope thereof, it being argued that the first class should include only those general laws which come within the description of rules of civil conduct of general application, cannot be maintained.

APPLICATION originally made in the District Court of Appeal for the First Appellate District for a writ of man-

date to compel the Council of the City of Richmond and the officers of said City to call an election for submitting to the voters of said City for approval or rejection of resolutions of the council, against which referendum petitions had been filed.

The facts are stated in the opinion of the court.

W. T. Kearney, Phil J. Strubel, and C. S. Hannum, for Petitioner.

Denson, Cooley & Denson, D. J. Hall, Stanley Moore, and Marcel E. Cerf, for Respondents.

SHAW, J.—These proceedings numbered 7270, 7272, and 7273, respectively, each entitled as above, are considered together for convenience. Each is an application to the district court of appeal for a writ of mandate to compel the council of the city of Richmond and the officers of said city to call an election for the purpose of submitting to the voters of said city, for approval or rejection, resolutions of the council against which a referendum petition had been filed by the required number of electors of said city in the manner prescribed by law for such referendum proceedings. The members of the council and the mayor and clerk of the city were also made parties defendant to said proceedings. The resolutions provided for the acquisition by the city of Richmond of certain tracts of land and the construction of a building thereon for a city hall and city offices. The district court, by its judgment, held that the resolutions were administrative acts and not subject to a referendum. Thereafter, upon petition, the judgment was vacated and the cause transferred to the supreme court for determination.

It is conceded that the proceedings for the referendum to the voters were regular in all particulars and the sole question, therefore, is whether or not these resolutions were of a character which must be submitted to the people whenever the power of referendum contained in the charter and constitution is regularly invoked.

The city of Richmond owned no property which could be used as a city hall, but was occupying premises leased from private persons for that purpose. Prior to May 4, 1914, the Harbor Center Land Company had offered to donate to the city certain real estate, as a site for a city hall, on condition

that the city would construct thereon a building and occupy the same as a city hall for municipal offices. On that date the said company, through Mr. Wall, its president, further offered to donate the sum of four thousand dollars toward the erection of said building on the said land, on condition the city would appropriate an equal amount and that the construction thereof would be commenced thereon without delay. Thereupon, on said date, the council passed the following resolution:

"Moved by Councilman Garrard, seconded by Councilman Hartnett, that the proposition of the Harbor Center Land Company offering to donate the sum of four thousand dollars toward the erection of a new city hall on the block of ground given by said company to the city of Richmond for that purpose on condition that the city appropriate at least an equal amount and that the construction of the new city hall be commenced without delay, and conditioned further, that when the building is completed, it shall be occupied and used as the city hall, be accepted, provided the deed therefor is approved by the city attorney."

This resolution is the subject of the referendum petition involved in case number 7270.

On May 18, 1914, a deed to said property from the Harbor Center Land Company to the city of Richmond was duly offered to the council for its acceptance on behalf of the city. Thereupon, the council adopted a resolution declaring that the said deed, conveying to the city said tract of land for city hall purposes, be accepted and recorded. This resolution is involved in case number 7272, aforesaid. On the same date a document was presented to the city council purporting to be an agreement between the land company and the city of Richmond, whereby the company was immediately to erect a building on said land, upon the completion of which the city was to occupy the same as a city hall and for municipal offices, and thereafter the city was to pay one hundred and eighty-five dollars as monthly rental therefor until the total rentals should amount to $13,320, whereupon the building should be conveyed by the land company to the city. Thereupon the city council passed a resolution approving the said agreement and directing the city clerk and mayor to execute the same on behalf of the city of Richmond, being the resolution involved in case number 7273. These two resolutions

are dependent upon that involved in case number 7270. They need not be separately considered.

The people of the city of Richmond derive the power of referendum from its charter adopted and approved by the legislature in 1909, and from the amendment of section 1 of article IV of the state constitution, adopted October 10, 1911. The material parts of the constitutional provisions are as follows:

"The legislative power of this state shall be vested in a senate and assembly which shall be designated 'The legislature of the state of California,' but the people reserve to themselves the power to propose laws and amendments to the constitution, and to adopt or reject the same, at the polls independent of the legislature, and also reserve the power, at their own option, to so adopt or reject any act, or section or part of any act, passed by the legislature. The enacting clause of every law shall be 'The people of the state of California do enact as follows.' "

The intervening clauses except from the operation of the referendum power urgency measures and acts calling elections, levying taxes, and appropriating money. Article III of the constitution prohibits the legislative department from exercising powers of government other than those properly belonging to it, except as expressly given to it in other parts of that instrument. The provision for the referendum is that it may be invoked on "any act or section, or part of any act, passed by the legislature." Then follows the form for the enacting clause of the statute. This language clearly implies that, with the exceptions above noted, the referendum does not apply to acts of legislative power which may be taken by joint resolution and that it may be invoked upon all acts which must be passed in the form of a statute. At least it may be said that it applies to all statutes enacting measures in which all citizens of the entire state are interested. This is sufficient for the purposes of this case. So far as the final clause of section 1, of article IV reserves the powers of initiative and referendum to the people of cities it refers back to the opening clause for a description of the powers so reserved, and the power of the people of the cities must, therefore, be deemed to be the same in character as that described in the opening clause with reference to the people of the state, that is to say, it applies only to the acts of the city

council, or other legislative body of the particular city, which are exercises of its legislative power.

In this state a municipality possesses powers both legislative and executive. Such executive powers are frequently committed to the city council and they are sometimes exercised by declarations in the form of an ordinance or resolution. The fact that executive action is taken by ordinance or resolution would not make it subject to the power of the referendum. With respect to such action, no matter how effected, the people, under the constitutional reservation, would not have the power of invoking the referendum to reject or approve them by popular vote.

The provisions of the Richmond charter relating to the referendum are as follows:

"Sec. 3. Any ordinance or resolution other than such as may be required to be passed at a particular time or for the purpose of complying with a charter or statutory law and excepting such ordinances as may be declared by the council to be necessary as emergency measures for the immediate preservation of the public peace, health, or safety shall be subject to a referendum as herein provided; provided further that the petition for such referendum be filed within thirty days from the final passage of such ordinance or resolution."

"Whenever a petition shall be presented to the council, asking that a particular ordinance named therein be submitted to a vote of the electors, and signed as required for an initiative petition in section two of this article, it shall be the duty of the council to submit the question of the approval or rejection of such ordinance or resolution to the electors at a regular or special election, and until such election is held and the ordinance approved by the electors, the provisions of such ordinance or resolution shall be suspended and inoperative."

"All the proceedings relative to the submission of ordinances by initiative shall apply to ordinances submitted by a referendum petition, and the vote thereon shall be of the same force and effect as provided in section two." (Stats. 1909, p. 1278.)

The declaration of the constitution that its provisions do not affect or limit the referendum power reserved to the people of any city by its charter, does not limit the constitutional reservation nor enlarge those reserved by such charter.

The two reservations are thereby made independent of each other. The constitutional reservation goes to the full extent expressed by its language. If the charter differs from the constitution in any respect it does not thereby diminish the power reserved by the constitution. On the other hand, if the powers reserved by the charter exceed those reserved in the constitution the effect of the charter would be to give to the people the additional powers there described. (*Long* v. *Portland*, 53 Or. 92, [98 Pac. 149, 1111].)

The suggestion is made that these provisions of the charter do not apply to acts of the council done by resolution. The section appears to have been awkwardly and carelessly drawn. It opens with the phrase ''ordinance and resolution'' and in subsequent references the word ''resolution'' is sometimes omitted. This is obviously an inadvertence to which no significance should be attached. We think the provisions of the referendum should be held applicable to all ordinances and resolutions which constitute an exercise of legislative power. The public discussion which led to the adoption of the referendum shows that it was directed at supposed evils of legislation alone. To allow it to be invoked to annul or delay executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of a city. In many cases it would entirely prevent the exercise of the executive power necessary to carry out the acts determined upon by the legislative department. In the absence of a very clear declaration to the contrary, it must be presumed that the power of referendum was intended to apply solely to the legislative powers of the city. (*Erwin* v. *Jersey City*, 60 N. J. L. 145, [64 Am. St. Rep. 584, 37 Atl. 732].) No such express declaration appears here and we, therefore, hold that the referendum powers given to the people of Richmond by its charter apply only to legislative acts of the council. The name given it is of no consequence. (*Creighton* v. *Manson,* 27 Cal. 613, 629.) If the council should, either by resolution or ordinance, do something purely executive in character, unmixed with any exercise of legislative power, the provisions of this section should be held inapplicable thereto. But if a legislative act is thereby done, the referendum may be invoked whether the measure is denominated an ordinance or resolution. This brings us to the consideration of the question whether or not the acts here involved were done in the exer-

cise of legislative power or were merely administrative or executive in character.

The aforesaid proposals of the Harbor Center Land Company were each coupled with conditions to be performed by the city. The acceptance thereof involved and required a determination by the city to comply with these conditions. The resolutions to accept the offers were, therefore, equivalent to and in effect were, resolutions declaring that the city would locate its city hall and municipal offices on the land described in the proffered deed, that it would acquire said land for that use, that it would construct, or cause to be constructed, a building thereon, and that the city officers should thereupon occupy the same for that purpose. Is such a determination by the city council an exercise of legislative power, or is it an act purely administrative in character?

That such matters have been understood, from the beginning of our state history, to be within the legislative power is manifest from an examination of our voluminous statutes. The legislature has enacted statutes fixing the location of the state capital at Vallejo, at Benicia, and at Sacramento, successively. It has enacted statutes to provide for the construction of a state capitol building and for remodeling the same, and for state buildings in San Francisco. It has, from time to time, by statute, established normal schools at various places in the state; also, state prisons, five asylums for the insane, and an asylum for the deaf, dumb, and blind. These comprise but a small part of legislative acts in the form of statutes which our legislature has enacted in pursuance of legislative power of this character. They each declare a public purpose, the purpose of locating the public building, or of locating the public place or institution, or of establishing such institution. So far as legislative conduct may determine the question, there can be no doubt that acts of the kind here involved are acts done in the exercise of legislative power, and that such measures on the part of the state are to be enacted by means of statutes duly presented to the governor.

This court, in the Madera Irrigation District case, elaborately considered the question of the character and extent of the legislative power. The court there said:

"That the legislature is vested with the whole of the legislative power of the state, and that it has authority to deal

with any subject within the scope of civil government, except in so far as it is restrained by the provisions of the constitution, and that it is the sole tribunal to determine as well the expediency as the details of all legislation within its power, are principles so familiar as hardly to need mention'' (92 Cal. 307, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 273]), and further, ''In providing for the public welfare or in enacting laws which, in the judgment of the legislature, may be expedient or necessary, that body must determine whether or not the measure proposed is for some public purpose'' (p. 309 of 92 Cal.). In *People* v. *Parks,* 58 Cal. 643, referring to the creation of drainage districts as a legislative act, the court said:

''To decide upon the necessity for drainage for a part or all of the territory of a state is to declare a public purpose. To declare a public purpose, and to create a district over a designated area of the state, in which that purpose shall be accomplished, and to provide ways and means for its accomplishment, are matters which belong exclusively to the legislature. If a necessity exists for the construction of public improvements within the state for a public purpose, the legislature must declare it. If a district has to be created over an area of the state the legislature must create it, and establish its limits. If property within it will be benefited by the improvements, the legislature must determine it, and prescribe the rules upon which taxation must be apportioned.'' In the same case Justice McKinstry says, in concurring, that the decision of the proposition that the work should be a public work or that a district was benefited thereby and should be assessed for its construction would be an act of legislative power which could not be delegated to executive or judicial officers.

There are many decisions declaring similar acts to be exercises of legislative power. The following acts, held to be legislative in character, are illustrative of the present case: Resolutions of intention to improve streets. (*Creighton* v. *Manson,* 27 Cal. 613, 629; *Quinehard* v. *Board of Trustees,* 113 Cal. 664, [45 Pac. 856].) Acts for the creation, control, or dissolution of reclamation districts, irrigation districts, and other local organizations to construct local improvements. (*People* v. *Reclamation Dist.,* 117 Cal. 122, [48 Pac. 1016]; *People* v. *Sacramento Drainage Dist.,* 155 Cal. 386, [103 Pac. 207];

*Brookes* v. *Oakland,* 160 Cal. 427, [117 Pac. 423]; *In re Madera Irr. Dist.,* 92 Cal. 307, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 273]; *In re Bonds San Joaquin Irr. Dist.,* 161 Cal. 347, [119 Pac. 198].) The creation of offices. (*Farrell* v. *Board of Trustees,* 85 Cal. 416, [24 Pac. 868].) Determining the disposition of public funds. (*Myers* v. *English,* 9 Cal. 349; *People* v. *Pacheco,* 27 Cal. 175; *Humbert* v. *Dunn,* 84 Cal. 60, [24 Pac. 111].) The granting of a franchise for a public toll bridge across Feather River. (*Fall* v. *Sutter,* 21 Cal. 252.) The division of the state into counties and the number thereof. (*People* v. *McFadden,* 81 Cal. 499, [15 Am. St. Rep. 66, 22 Pac. 851].) The apportionment of the county debt to be made upon the division of one county into two counties. (*Tulare County* v. *King Co.,* 117 Cal. 198, [49 Pac. 8].) The levying of taxes and the determination of all questions of necessity, discretion, and policy involved therein. (*McHenry* v. *Downer,* 116 Cal. 24, [45 L. R. A. 737, 47 Pac. 779]; *Houghton* v. *Austin,* 47 Cal. 654; *Hardenburgh* v. *Kidd,* 10 Cal. 403; *McCabe* v. *Carpenter,* 102 Cal. 474, [36 Pac. 836]; *Blanding* v. *Burr,* 13 Cal. 351; *Kelsey* v. *Nevada,* 18 Cal. 632.) The opening, laying out, or vacation of streets. (*Brook* v. *Horton,* 68 Cal. 558, [10 Pac. 204]; *Polack* v. *Orphan Asylum,* 48 Cal. 492; *San Francisco* v. *Burr,* 108 Cal. 461, [41 Pac. 482]; *Blood* v. *McCarty,* 112 Cal. 564, [44 Pac. 1025]; *Wulzen* v. *Board,* 101 Cal. 24, [40 Am. St. Rep. 17, 35 Pac. 353]; *San Mateo* v. *Coburn,* 130 Cal. 635, [63 Pac. 78, 621]; *DeWitt* v. *Duncan,* 46 Cal. 345.) Determining the text books to be used in schools. (*People* v. *Board etc.,* 54 Cal. 377.)

The resolutions of the Richmond city council come within the principles established by these authorities. They involved and required a determination by the council that the public interest of the city required that it should have a city hall, that the same should be located on the land offered for that purpose, that said offer should be accepted, that a suitable building should be erected thereon, that the money of the city should be appropriated and used in the construction thereof, and that, when completed, the building should be occupied and used by the city officers as a city hall and for municipal purposes, and the declaration by the council that all of these things should be done accordingly. This constituted a declaration of a public purpose and a provision for ways and

means of its accomplishment. As said in the quotation from *People* v. *Parks,* 58 Cal. 643, it was to that extent a thing which the legislative power alone may declare and determine. The council could consider the questions of public good, public interests, and public policy involved solely by virtue of and in the exercise of its legislative powers, and its action thereon was clearly an act in the exercise of that power.

The decisions upon which the respondents rely, as contravening this proposition, are, for the most part, not in point or easily distinguishable. In *Earl* v. *Bowen* (146 Cal. 754 [81 Pac. 133]) it was held that, under the special provision of the Los Angeles charter then in force, the contract for city printing could be made by an order of the council without the formality of an ordinance, regardless of its true character as a legislative act, and that in the sense in which the words "legislative power" was used in the general provisions of the charter requiring the city's legislative powers to be exercised by ordinance, the making of such printing contract was not an exercise of that legislative power. The decision amounts to a construction of the Los Angeles charter and does not establish a general principle, nor is it applicable to the present case. In *San Francisco Gas Co.* v. *San Francisco,* 9 Cal. 453, the court remarks, in argument, that the purchase of gas by a city involved only an exercise of the power of a private corporation and was not a political act. The court was there referring to the purchase of gas for current use incidental and necessary for the occupation of a city hall and fire engine houses which had been previously established by the city authorities and which required lighting for their convenient use. These buildings were, of course, constructed and used in pursuance of the enactments of the legislative authority of the city. The securing of gas for the convenience of the officers was merely a thing incidental to the execution of the legislative purpose implied from the acquisition and use of said buildings. Such acts are always held to be administrative in character. A number of decisions from other states, of similar character, are cited. Summarized, these decisions, and those just mentioned, may be taken as establishing the proposition that contracts made by a local governmental body, having both legislative and executive powers, for the purchase of supplies for use in the current administration of governmental affairs, such as cur-

rent printing expenses, gas, water, or electricity for current lighting of city offices or streets and furniture and fittings for such offices, are to be deemed as acts of administration and classed among those governmental powers properly assigned to the executive department. They comprise acts necessary to be done to carry out legislative policies and purposes already declared by such legislative body, or devolved upon it by the organic law of its existence. Some of the decisions go upon the theory that, although legislative in character, they may be delegated by the legislature to others because they involve such detail that it is impossible or extremely inconvenient and disadvantageous for the legislative body itself to undertake it, as was stated in *Upham* v. *Supervisors*, 8 Cal. 383. This proposition does not affect measures of the character here under consideration which do not merely carry out the previously declared legislative purpose, but, as we have seen, expressly declare such purpose and policy.

The case of *Ogden* v. *Bear River etc. Co.*, 28 Utah, 25, [76 Pac. 1069], appears to hold that a grant by a city to a water company of a franchise for a term of years to lay water pipes in the streets and supply water to the city and its inhabitants was not an exercise of legislative power. If it is to be so understood, it is contrary to the decisions of this state and to practically all authority elsewhere and it need not be further noticed.

Lastly, the respondents contend that considerations of public convenience and efficiency in administration demand that legislative powers be divided into two classes, to one of which alone the initiative and referendum were intended to be applicable, while the other is not within the scope thereof. It is argued that the first class should include only those general laws which come within the description of rules of civil conduct of general application. An intimation to this effect was made in course of the argument by the supreme court of Oklahoma in *Brazell* v. *Zeigler*, 26 Okla. 826, [110 Pac. 1052]. The only point involved or decided in that case was that an order of the county commissioners directing their clerk to advertise for bids for the erection of a bridge was not an act of legislation but an administrative act to carry into execution law already made. The remark that the referendum power should be limited to general measures declaring

rules of civil conduct was not necessary either to the argument or to the decision.

We cannot agree to this proposition. It is a well known fact, apparent from the many decisions on the subject in this and other states, and from our own statutes, that strenuous public controversies have often arisen over such subjects as the location of county seats, state capitols, public schools, and public charitable or penal institutions. So common have been these disputes that it has become customary with legislatures to provide for the adjustment of local matters of this kind by submitting the choice in advance to a popular vote. The interest of the populace in a rule of property, or of personal rights or relations, or even in a penal law, is usually slight and much less than that generally manifested with respect to the more material and more easily understood propositions to erect public buildings, locate a seat of local government, or establish a public institution. It cannot, with reason, be said that the people of the state, or of the city of Richmond, in enacting the initiative and referendum provisions, intended that they should not apply to matters of legislation affecting the entire city, and of a character likely to engage the attention and arouse the favor or opposition of every voter, such as those here involved. The language used in the respective constitutional and charter provisions is broad enough to include all acts of legislation in which the voters, to whom the right is reserved, are interested, and all legislation for the city as a whole. There is no ambiguity in respect to this question and no good reason to suppose that such matters were to be excluded. The court cannot create an exception where none is expressed or called for by the circumstances.

There may be grounds for excluding from the operation of these powers legislative acts which are special and local in their nature and in which the entire body of citizens who shall exercise the power of referendum and initiative is not interested, such as resolutions to make local improvements and the like. This question is not before us, for the matters determined by the resolution are not local to any particular part of Richmond but apply generally to, and interest all in the entire city. The doctrine alluded to was stated by the supreme court of Arizona in *Globe* v. *Willis* (Ariz.), [146 Pac. 544], but the case was decided upon a consideration of the

particular language of the Arizona constitution.   Inasmuch as the question will doubtless be brought before us in the future we desire to state here that we express no opinion on the subject and that what we have said must not be understood as having any bearing thereon.

Upon the argument thus made, it is clear that the referendum proceeding upon the resolutions in question was maintainable and that the election to submit the same to the voters should have been called.   The petitioner is entitled to the relief prayed for.

It is, therefore, ordered that peremptory writs issue in each of the aforesaid cases numbered 7270, 7272, and 7273, respectively, commanding the city council of the city of Richmond forthwith to call a special election for the purpose of submitting to the qualified voters of said city, for their approval or rejection, the particular resolutions which are made the subject of the respective petitions in said causes.

Lorigan, J., Sloss, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.