[No. 8,079.—In Bank.]
July 28, 1882.

## THE LOS ANGELES GAS CO *v.* J. R. TOBERMAN, Mayor.

Contract of Municipal Corporation—Charter of Los Angeles City—Ultra Vires.—By Section 1 of Article xii. of the Charter of Los Angeles (Stats. 1877–1878, p. 675), it is provided, that "the City of Los Angeles shall not be, and is not bound by, any contract, or in any way liable thereon, unless the same is made in writing by order of the Council, the draft thereof approved by the Council, and the same ordered to

61 199
115 516
61 199
131 266
61 199
135 615
61 199
q146 761
e146 764

be, and be signed, by the Mayor or some other person in behalf of the city," etc. * * *; and by Section 19 of the same Article (Id. 678) it is provided, that " ten members of the Council shall be necessary to pass any ordinance or resolution, *or to perform any other act* whereby any debt is created, and money is appropriated, or the revenue of the city is in any way diminished; that upon the passage of any such ordinance, resolution, or motion, the ayes and noes shall be called, and the names of the persons voting for and against such ordinance, resolution, or motion shall be entered upon the journal of the proceedings of the Council." Acting professedly under these provisions, the Council accepted a proposal of the plaintiff to light the streets of the city with gas for three years, upon certain specified terms, and directed the City Attorney to prepare a draft of the agreement. The draft prepared and submitted was not approved in its original form, but after three material amendments had been offered and adopted, the terms thus settled by the adoption of the amendment were on motion agreed to by a vote of fourteen to one, and the Mayor authorized and directed to sign the same on behalf of the city; but the names of those who voted for and against their adoption were not entered upon the journal. The Mayor having refused to sign the contract, the Council, by a vote of eight to five, ordered the clerk to sign it on behalf of the city.

*Held:* The agreement was not made according to the forms prescribed by the charter of the city, and is not binding upon the city.

ID.—ID.—ID.—(MCKEE, ROSS, and SHARPSTEIN, JJ.)   By the sections of the charter referred to power has been given to the Council to contract, in writing, for sums over three hundred dollars, and the Council may, in the exercise of its power, authorize such a contract to be made by ordinance, resolution, or motion.

ID.—ID.—ID.—(MCKINSTRY, MYRICK, and THORNTON, JJ.)   Whether any sum greater than three hundred dollars can be appropriated out of the City Treasury otherwise than by *ordinance*, to be submitted to the Mayor for his approval, is a question as to which we express no opinion.

APPEAL from a judgment for the plaintiff and from an order denying a new trial in the Superior Court of the County of Los Angeles.   SEPULVEDA, J.

*H. T. Hazard, H. K. S. O'Melveny,* and *H. T. Gage,* for Appellant.

*John F. Godfrey* and *Smith, Brown & Hutton,* for Respondent.

MCKEE, J.:

This appeal comes from an order denying the motion of the appellant for a new trial, and from the final judgment entered in the case.

The case involves the right of the plaintiff and respondent to a writ of mandate to compel the Mayor of the city of Los Angeles to sign a warrant, drawn by order of the City Council, for a claim which had been examined, allowed, and ordered to be paid to the plaintiff; but the Mayor refused to sign because the alleged contract, upon which the claim was founded, was not binding upon the city.

It appears by the petition for the writ that the Los Angeles Gas Company, by the instrument in writing, which it claims to be a contract between it and the city, undertook to light the streets of Los Angeles with illuminating gas, and to maintain the lamps of the city in good order and ignite and extinguish them for two years from March 31, 1881, for which the city agreed to pay by warrants drawn upon the Gas Fund of the city, within fifteen days after each month's performance of the contract, fifteen and one fourth cents per night for each and every lamp maintained, ignited and extinguished. This instrument in writing the Council ordered the Mayor of the city to sign, but when it was presented to him for his signature, he refused, and upon his refusal the Clerk of the Council, by order of the Council, signed it in behalf of the city.

If the Clerk had authority to sign for the city, the contract thus executed, if otherwise made in the exercise of power conferred upon the municipality, is valid and binding, otherwise it is not.

Of course, the source of power to a municipal corporation is its charter. Upon the City Council the charter of Los Angeles confers power to contract for lighting the streets and public buildings of the city (Sec. 1, Art. iv.) It also prescribes the modes of contracting; and the mode becomes the measure of the power. The modes are prescribed by §§ 1 and 19 of Art. xii. of the charter. Section 1 declares: " The City of Los Angeles shall not be and is not bound by any contract, or in any way liable thereon, unless the same is made in writing by order of the Council, the draft thereof be approved by the Council, and ordered to be and be signed by the Mayor or some other person in behalf of the city. But the Mayor and Council by an ordinance or the Council by a resolution, or motion may authorize any officer, committee or agent of the city, to bind the city, without a contract in writing, for

the payment of any sum of money not exceeding $300; *provided*, that no contract in writing shall be valid unless it be completely executed, fulfilled and performed, within the period of two years after the execution and delivery thereof."

And Section 19 declares that, " Ten members of the Council shall be necessary to pass any ordinance or resolution, *or to perform any other act* whereby any debt is created, and money is appropriated, or the revenue of the city is in any way diminished. Upon the passage of any such ordinance, resolution or motion, the ayes and noes shall be called, and the names of the members voting for and against such ordinance, resolution, or motion, shall be entered upon the journal of the proceedings of the Council." (Stats. 1877–8, pp. 675, 678.)

It is manifest from these sections of the charter that power has been given to the Council to contract by writing for all sums over three hundred dollars; and that the Council may, in the exercise of its power, authorize a contract to be made for any sum over three hundred dollars, by ordinance, resolution or motion. The expression of the will of the Council in matters of written contracts, may be given by any one of these modes. Each of them as used in the sections of the charter just quoted, has reference to a legislative Act of the character described, *i. e.*, an Act whereby any debt may be created, any money appropriated, or the revenue of the city diminished. But a distinction is made between an ordinance, resolution and motion. An ordinance or resolution which authorizes an act for the creation of a debt must be approved and signed by the Mayor. Section 11 of Article xii of the charter declares, " That every ordinance and resolution which shall have been passed by the Council, shall, before it becomes effective, be signed by the Clerk of the Council and be presented to the Mayor for his approval and signature." But the adoption of a motion does not need executive approval. In that respect it differs from the passage of a resolution or ordinance. Yet in all other respects adoption of a motion for creating a debt over three hundred dollars must be attended with the same formalities as the passage of a resolution or ordinance, *i. e.*, it must be made upon a call of the ayes and noes, by a vote of ten members of the Council, whose

names, together with the names of those voting against it, must be entered upon the journal of the proceedings of the Council; and after a contract shall have been thus authorized, it must be, by order of the Council, reduced to writing, and the draft of it approved by the Council, who must then order it to be signed by the Mayor or some other person in behalf of the city.

From this it results that it is not necessary for the Mayor to execute a contract ordered and approved by the Council, by an ordinance, or a resolution, or a motion, adopted according to these provisions of the Charter, unless the Council make an order that he shall sign in behalf of the city. If such an order be made the Mayor is authorized to sign for the city; but it is no part of his official duties as Mayor to sign contracts. As the executive officer of the city he is required by the Charter " to exercise a careful supervision over the affairs and subordinate officers of the city," to approve official bonds, ordinances, and resolutions; and to perform the duties imposed upon him as Judge of the City Court—as a member of the Boards of Equalization and Police Commissioners, and as trustee of the public library of the city. In the performance of his official duties, no person is authorized to usurp his functions while he is in a condition to discharge those duties. The Council have no right to appoint a substitute for him; that can not be done, except in case of sickness, inability to act, or absence from the city, and then the President of the Council is, by the Charter, authorized to act as Mayor *pro tem.*, and to perform all the duties of the office.

As the signature of contracts in writing is no part of the duties of the Mayor, authority to sign comes from the Council; and when that body by its order directed its Clerk to sign the contract under consideration, and he signed it, it was well executed, and if otherwise made according to the Charter, it is valid and binding on the city.

But the motion by which the terms of the agreement between the plaintiff and the Council were settled was not voted as prescribed by the Charter, nor was the agreement itself ordered to be reduced to writing, nor was a draft of it pre-

pared and submitted to the Council for its approval and order for signature as required by the provisions of the Charter.

The journal of the proceedings of the Council shows that, pursuant to an advertisement for sealed proposals for lighting the streets of the city, bids were sent in, which, upon being opened by the Council, were referred to a committee that af- terwards reported in favor of awarding the contract to the plaintiff, on its bid to light the streets of the city with gas for three years, at fourteen and three quarter cents per lamp per night for twenty-five nights per month. With this recommendation the Council agreed, adopted it by a vote of only seven members, and then directed the City Attorney to draft a copy of the agreement, embodying the proposal which had been accepted, for the examination and approval of the Council. Such a draft was prepared and submitted, but it was never approved. It was used as the basis of other negotiations with the plaintiff. Three amendments were offered and adopted which changed entirely the terms in the draft which had been submitted. The new terms which were settled by the adoption of the amendments were, on motion, agreed to by a vote of fourteen to one; but the names of those who voted for and against their adoption were not entered upon the journal of the proceedings as required by the charter; and the Mayor having refused to sign the contract as thus adopted and after having been directed to do so by the Council, the latter afterwards by a vote of eight to five ordered the Clerk to sign it on behalf of the city, which was done. The agreement was therefore not made according to the forms prescribed by the charter of the city, and it is not binding upon the city. Whence it results that the plaintiff was not entitled to a writ of mandate, and the order and judgment appealed from must be reversed.

Ordered accordingly.

Ross and Sharpstein, JJ., concurred.

McKinstry, J., concurring :

I concur with Mr. Justice McKee that the action of the Common Council was not authorized by the charter. Whether any sum greater than three hundred dollars can be appropri-

ated out of the City Treasury otherwise than by *ordinance*, to be submitted to the Mayor for his approval, is a question as to which I express no opinion.

Myrick and Thornton, JJ., concurred with Mr. Justice McKinstry.