[L. A. No. 1663.   Department One.—May 17, 1905.]

## EDWIN T. EARL, Appellant, v. W. M. BOWEN et al., Respondents.

CHARTER OF LOS ANGELES—ADMINISTRATIVE FUNCTION OF COUNCIL— LETTING OF CONTRACT FOR PRINTING — ORDER OF COUNCIL. — The letting of contracts by a city council is an administrative and not a legislative function; and under a proper construction of the charter of the city of Los Angeles the initial steps for the letting of a contract for the city printing may be taken by order of the council without an ordinance.

ID.—VALIDITY OF EXECUTION OF CONTRACT—APPROVAL OF FORM BY CITY ATTORNEY—SIGNATURE OF CLERK BEFORE APPROVAL BY COUNCIL.— Where there was a compliance with the only essential requirement of the charter, that the form of the contract must have the approval of the city attorney indorsed upon it before its approval by the council, the fact that it was signed by the clerk, under their authority for his signature, before their approval, was immaterial. Their approval of it with the clerk's signature was essentially equivalent to approving it before the clerk signed.

---

[1] 68 Am. St. Rep. 30.

ID.—DELEGATION OF AUTHORITY TO CLERK — MINISTERIAL ACT. — The
signing of the contract by the clerk was but a ministerial act, in-
volving the exercise of no discretionary power, and could be dele-
gated. The order of the council directing the clerk to sign it for
the city carried with it his authority to sign.

APPEAL from a judgment of the Superior Court of the
County of Los Angeles. N. P. Conrey, Judge.

The facts are stated in the opinion.

Anderson & Anderson, and Sheldon Borden, for Appellant.

W. B. Matthews, City Attorney, Herbert J. Goudge, As-
sistant City Attorney, and Hunsaker & Britt, for Respondents.

CHIPMAN, C.—Action to restrain the defendant officers
of the city of Los Angeles from giving out public printing
and advertising to defendant, the Times-Mirror Company,
under a contract between that company and the city. De-
murrers to the complaint were interposed for insufficiency
of facts and because of uncertainty and ambiguity in the
complaint and that plaintiff has not legal capacity to bring
the action. The demurrers were sustained, and plaintiff de-
clining to amend, judgment passed for defendants, from which
plaintiff appeals.

Briefly stated, the complaint shows: That prior to May 31,
1904, the city council, without passing any ordinance on the
subject, secured bids from various newspapers for the city
printing for the year commencing June 8, 1904, and received,
among others, a bid from the Times-Mirror Company; on
May 31, 1904, the council duly and regularly adopted the fol-
lowing resolution, two thirds of the council voting therefor:
"Mr. Davenport moves that the bid of the Times-Mirror Com-
pany at sixty cents per inch for publishing the city advertis-
ing be accepted, and the city attorney be instructed to prepare
and present the necessary contract and bond with the said
Times-Mirror Company, and that the city clerk be instruct-
ed to sign the same for and on behalf of the city." The
city attorney prepared the draft of the contract involved,
without further action of the council, and on June 6, 1904,
"indorsed thereon in writing his approval of said draft as to
form," and thereafter, on the same day, the city clerk signed

the contract as follows: "City of Los Angeles, by H. J. Le-
lande, City Clerk," and the Times-Mirror Company also
signed it, and thereafter on the same day the city attorney
presented the contract and bond to the council, and by a
vote of six of its members the council approved the bond and
contract. No further action was taken by the council or by
the clerk or by any other officer of the city with reference to
the execution of the contract. It was further alleged that
city printing has been given out under this contract, and will,
unless an injunction issues, continue to be given out, thus cre-
ating pretended claims against the city, resulting in a mis-
appropriation of public moneys or necessitating expense and
multiplicity of action to defend against them, all to the
irreparable injury of plaintiff and the other taxpayers of the
city.

The only points discussed in the briefs arise on the general
demurrer; questions arising on other grounds of the demurrer
are therefore deemed waived.

Plaintiff's contention is that the contract is invalid: 1.
Because all powers conferred by its charter upon the city
must, in the absence of an express exception, be exercised by
ordinance; 2. Because by the express terms of the charter all
"legislative power of the city" must be exercised by ordi-
nance, and the power to make a contract of this character is
a "legislative" power; 3. Because the charter prescribes cer-
tain formalities in the mode of executing a contract after it
has been properly authorized by ordinance; that these for-
malities are mandatory and no contract is binding unless they
are observed, which was not done in this instance; 4. Because
the city clerk has no authority and is not authorized to sign
a contract on behalf of the city, and the council has no power
to authorize or order him to do so; and if the council could
so authorize him it can only be done by ordinance.

Defendants' position is: 1. That in awarding the contract
the council acted in its business or administrative capacity,
and not in the exercise of its legislative or governmental
power; 2. That no rule of law, independent of statutory or
charter provisions, requires authority to enter into a contract
on behalf of a municipality to be conferred by ordinance;
3. That the charter of the city expressly authorizes the coun-
cil to contract by order; 4. That the mayor is not a com-

ponent part of the council when exercising the contracting power of the city, and has no power to veto the action of the council relating to contracts; 5. That all formalities required by the charter were observed; 6. That the council had authority to order the clerk to sign the contract on behalf of the city, and no ordinance was required for that purpose; 7. That the facts stated in the complaint are insufficient to entitle plaintiff to injunctive relief.

It is not disputed that the mode of contracting prescribed by the city's charter is the measure of the city's power to contract. The case seems to turn largely upon the question whether the initial steps in the mode prescribed must be taken by ordinance or may be taken by order of the council. Section 2, paragraph 24, article I (Stats. 1889, p. 458), provides that the corporation shall have certain enumerated powers, which "shall be exercised by ordinance, except as hereinafter provided." None of these enumerated powers bears directly upon the making of contracts, unless it be paragraph 23, relied on in part by appellant, which declares that the city may exercise all municipal powers "necessary to the complete and efficient management and control of the municipal property and for the efficient administration of the municipal government, . . . except such powers as are forbidden or are controlled by general law."

In the enumeration of powers and duties of the council it is provided by section 12 of article III (Stats. 1889, p. 462), that "All legislative power of the city is vested in the council, subject to the power of veto and approval by the mayor, as hereinafter given, and shall be exercised by ordinance; other action of the council may be by order upon motion." An ordinance becomes operative without the mayor's approval unless he returns it to the council with his objections in writing within ten days after it shall have been presented to him; otherwise his approval is necessary. If he disapproves he must return it with his objections, and it does not become operative unless passed by a three-fourths vote, where a two-thirds vote is required to pass the ordinance in the first instance, and in all other cases by a vote of two thirds. (Sec. 37, art. III, Stats. 1889, p. 465.) The mayor's veto power does not extend beyond ordinances.

Section 16 of article III (Stats. 1889, p. 462) is as follows:

"Six members of the council shall constitute a quorum for the transaction of business, but no ordinance shall be passed or other act done granting a franchise, making any contract, auditing any bill, ordering any work to be done or supplies to be furnished, disposing of or leasing the city property, or doing any assessment or street improvement, or building sewers, or any other act to be done involving the paying of money, or the incurring of debt by the city, unless two thirds of the members of the whole council vote in favor thereof. All other ordinances may be passed by a vote of a majority of the whole council." Nine members compose the council. (Art. II, sec. 3, Stats. 1889, p. 458.) Section 20 of article III (Stats. 1889, p. 462) is as follows: "The meetings of the council shall be public, and a journal of its proceedings shall be kept by the clerk under its direction, and the ayes and noes shall be taken and entered in the journal in the final action upon the granting of franchises, making of contracts, auditing bills, ordering work to be done, or supplies furnished, disposing of or leasing city property, the passage of any ordinance, the ordering of assessments for street improvements, or building of sewers, or upon any act that may involve the payment of money, or the incurring of debt by the city, and upon the payment of the salaries of municipal officers, and in all other cases upon the call of any other member."

Section 207 of article XX (Stats. 1889, p. 506), entitled "Contracts," is as follows: "The city of Los Angeles shall not be and is not bound by any contract, or in any way liable thereon, unless the same is made in writing by order of the council, the draft thereof approved by the council, and the same ordered to be, and be, signed by the mayor, or some other person authorized thereto in behalf of the city; provided that the approval of contracts by the city attorney, as required by the provisions of article IV of this charter (sec. 49), shall be indorsed on the draft thereof before the council shall have the power to approve the same; but the council, by an ordinance, may authorize any officer, committee, or agent of the city to bind the city without a contract in writing for the payment of any sum of money, not exceeding three hundred dollars."

The provision in section 49 of article IV, referred to last above, is that the city attorney "shall approve in writing the

drafts of all contracts before the same are entered into on behalf of the city.'' The foregoing are the only provisions of the charter pointed out by appellant as having direct reference to contracts. In addition thereto and as showing the care with which the payment of ''claims and demands'' is safe guarded, reference is made to article XXI (Stats. 1889, p. 506), from which it will be seen that all claims and demands against the city (except certain claims not now involved) must take a prescribed course before they can be paid; they must not only be approved by the council, but must then go to the mayor for approval or disapproval, which latter action if taken may be overruled by a two-thirds vote of the council. Provision is also made by which the auditor has certain supervisory powers, and his adverse action may be overruled by the council, as in the case of the mayor. These provisions are instanced by appellant to show a carefully devised procedure to protect the city against improper expenditure, which it is claimed ''becomes a mere farce if the six councilmen necessary to approve the claims in the first instance and to overrule the objections of the mayor or auditor in case of rejection by either of these officials have absolute . . . power, subject to no check, . . . to make the contracts on behalf of the city under which the great bulk of the money for claims and demands will be paid out.'' We cannot see that this feature of the charter throws any light upon the question. The provisions just referred to would apply equally to a claim or demand based upon an ordinance. Under the provisions of section 16 of article III (Stats. 1889, p. 462) the council can do no act ''involving the paying of money, or the incurring of debt by the city, unless two thirds of the members of the whole council vote in favor thereof.'' The charter-makers may have regarded this as sufficient security against improvidence in expenditures. However this may be, we must take the charter as we find it and construe its provisions as they have been enacted. (*Electric L. and P. Co.* v. *City of San Bernardino,* 100 Cal. 348.)

The charter does not attempt to define what acts are intended to be embraced by the term ''legislative power'' nor does it define the meaning of the term ''order'' as used in the charter. We may look to the nature or character of the act to be performed to determine whether it should be classified

as legislative or as administrative, and we may also look to all of the charter provisions to see whether the intention of its makers was to include the making of contracts, such as we have here, among the powers to be exercised by order. A particular act might very properly be regarded as legislative in its character, and yet the charter might authorize its exercise by order or resolution by a specific provision to that end.

It is noticeable that in the thirty-eight sections prescribing the powers and duties of the council in nearly every instance where a power is given it is expressly required to be exercised by ordinance, but in no instance is it expressly stated that contracts entered into or other acts done by the council involving the paying of money shall be authorized by ordinance. The limitation put upon the council by section 16 of article III is, that no *ordinance* shall be passed except by a two-thirds vote "*or other act done* granting a franchise, making any contract, auditing any bill," etc. (enumerating many other acts), "unless two thirds of the members of the whole council vote in favor thereof." It cannot be reasonably claimed that this section requires the "making any contract" to be authorized by ordinance, any more than it requires the "auditing any claim" to be so authorized, and certainly it will not be contended that the auditing of a claim must be by ordinance. Looking to section 20 of article III, we find "making of contracts" included among the other acts mentioned in section 16, and associated with these is "the passage of any ordinance." No inference can be drawn from these sections that contracts must be authorized by ordinance. Section 37 of this article gives the veto power to the mayor only as to ordinances. In matters involving the payment of claims, as we have seen, his power is to approve or disapprove when sent to him. But no implication follows that contracts must be authorized by ordinance, or that the veto power should extend to them. (*Jacobs* v. *Board of Supervisors,* 100 Cal. 121.)

Section 12 of this article above quoted vests all "legislative power" in the council, subject to be vetoed by the mayor, and "shall be exercised by ordinance"; and it is provided that "other action of the council may be by order upon motion." We do not think that the making of a contract such as the

one here is the exercise of "legislative power" in its true sense as used in the charter.

The distinction between the power of a municipal corporation to contract and the power to legislate, considered apart from any express or implied provision of the charter, is well recognized. The council acts in a double character; in a public and political character, exercising subordinate legislative powers, and in its private character, exercising the powers of an individual or private corporation. (*San Francisco Gas Co.* v. *City of San Francisco,* 9 Cal. 453, in which case it was said that "the purchase of gas involves only the exercise of a power of a private corporation; it requires the exercise of no political power.") So also in contracting for water supply as held in *Illinois Trust and Savings Bank* v. *City of Arkansas,* 76 Fed. 271, 282; held also in *Kramarath* v. *City of Albany,* 127 N. Y. 575, 580, that the leasing or furnishing of a room for the transaction of the city's affairs is a mere business act, and may be delegated to agents or committees, which, it may be remarked, could not be done if purely legislative in its character. (See, also, *Ukiah* v. *Ukiah W. and I. Co.,* 142 Cal. 173, 179;[1] *Seward* v. *Town of Liberty Bank,* 142 Ind. 551, 552; *Town of Gosport* v. *Pritchard,* 156 Ind. 400, 404; 1 Dillon on Municipal Corporations, 4th ed., sec. 66.) We do not think Mr. Justice McKee, in *Los Angeles Gas Co.* v. *Toberman,* 61 Cal. 199, relied on by appellant, intended to intimate that the distinction above pointed out does not exist when he spoke of the making of a contract for lighting the streets of Los Angeles as having reference to the legislative power of the council under the charter of 1877 (Stats. 1877-8, pp. 675, 678). The point decided did not turn upon the question we are now considering.

Appellant says in his brief: "The making of a contract may not be, and probably is not under the authorities, a governmental or 'legislative' function; but a wholly different principle is involved in and should be applied to the execution of contracts necessary and only necessary 'for the efficient administration of the municipal government.'" Counsel here has reference to subdivision 23 of section 2 of article I (Stats. 1889, p. 458), *supra.* This section enumerates the subjects over which the corporation has power, but in none of

[1] 100 Am. St. Rep. 107.

the subdivisions is the making of contracts mentioned. Sub-
division 23 would seem to be little, if anything, more than a
statement that the corporation has power to do what would
be implied if the statement had not been made. Subdivision
24 declares that all the powers conferred by the article ''shall
be exercised by ordinance, except as hereinafter provided.''
To give subdivision 23 the all-embracing interpretation con-
tended for would make an ordinance necessary to the validity
of almost every administrative act of the council. The argu-
ment proves too much. But if the making of a contract is
the exercise of the ''municipal powers necessary . . . for the
efficient administration of the municipal government,'' as is
urged, it is to be ''exercised by ordinance *except as herein-
after provided*'' (subd. 24). And this brings us to notice
article XX (sec. 207), *supra*. If this section has the meaning
contended for by respondent, the provisions of article I and
subsequent provisions referred to in article III must give
way to it. The section stands alone, as article XX, and its
provisions relate to a particular subject, namely, the making
of contracts, and, we think, ''must govern in respect to that
subject as against general provisions in other parts of the
statute, although the latter, standing alone, would be broad
enough to include the subject to which the particular pro-
visions relate.'' (Endlich on Interpretation of Statutes, p.
288, cited in *Frändzen* v. *County of San Diego*, 101 Cal. 317;
*State* v. *Goetze*, 22 Wis. 363; *Healy* v. *Superior Court*, 127 Cal.
659.) Appellant contends that there is neither an express nor
an implied exception in section 207 to the requirement of
section 2, subdivision 24, that all powers of the municipality
''shall be exercised by ordinance''; that on the contrary it is
perfectly consistent with that provision and ''merely provides
a mode for *exemplifying* contracts *after they have been duly
authorized by ordinance*.'' We cannot so restrict the mean-
ing of the section.

If the making of the contract in question was essentially a
''legislative'' act and, therefore, to be exercised by ordinance,
there might be force in the suggestion that section 207 merely
provides a mode or means of exemplifying the contract. But
as we cannot regard the making of the contract to be purely
a legislative act, and as there cannot be found in any previous
provision of the charter either an express or implied direction

that contracts must be authorized by ordinance, we are of the opinion that section 207 plainly authorizes the council, by order, to enter into the contract. In saying that the city "shall not be, and is not, bound by any contract . . . unless the same is made in writing by order of the council," etc., it was equivalent to saying that it could be bound by order subject, of course, to the observance of the provisions of the section. The last paragraph of the section gives support to this construction, for it says: "But the council, by an ordinance, may authorize any officer, committee, or agent of the city to bind the city without a contract in writing for the payment of any sum of money not exceeding three hundred dollars." In the particular now being considered the provisions of section 207 are the same as section 1 of article XII of the charter of 1878 (Stats. 1877-8; p. 675), cited by appellant on another point next to be noticed.

Appellant contends that the order in which the acts prescribed by section 207 are to be done is material; and that because the clerk was ordered to sign the contract before it was prepared, and signed it before the draft was approved by the council, the contract is invalid. (Citing *Frick* v. *Los Angeles,* 115 Cal. 512, and *Times Pub. Co.* v. *Weatherby,* 139 Cal. 618.) In the Frick case section 207 was before the court, but the point decided was that because the mayor, who was directed to sign the contract, did not do so, the section was violated. In the other case a similar section (167) (Stats. 1895, p. 398) in the charter of the city of Eureka was involved, but there the council did nothing but invite proposals and accept the bids. There was no compliance with the charter provision. In the present case the contract was prepared by the city attorney and his approval was indorsed thereon. It was then signed by the Times-Mirror Company and by the clerk of the city; it was then presented to the council and was approved by it. All these acts were done on the same day (June 6, 1904). In *Goodyear Rubber Co.* v. *Eureka,* 135 Cal. 613, the court said: "It is immaterial whether the city attorney's approval was before or after the mayor had signed the contract." Appellant replies that the Eureka charter differed from the Los Angeles charter in this—that the Los Angeles charter provides that the city attorney's approval shall be indorsed on the contract "before the council shall

have power to approve." This provision was complied with in the present case. But the Eureka case applies, since the order in which the city attorney was to approve was the same as the order in which the clerk here was to sign. However this may be, we think when the council approved the contract with the clerk's signature attached for the city, it was in every essential equivalent to approving it before the clerk signed. The essential thing to be done was the preparation and indorsement of the draft by the city attorney and its approval by the council; whether the clerk signed for the city before or after the approval of the council was of no material consequence. The only requirement of the charter as to the order in which the contract is to be signed is that the city attorney's approval as to form must be indorsed on the contract before the council can approve. (*Estate of Johnson,* 98 Cal. 531; *Derby* v. *City of Modesto,* 104 Cal. 515.) But it is more seriously argued that the clerk had no authority to sign the contract, because he is not a person authorized to sign contracts for the city, and the council had no authority to order him to do so except by ordinance. This contention is also based on the claim that the words "authorized thereto" introduce a vitally different feature from the provision in the old charter which did not contain those words. As to the point that it is not one of the duties of the clerk to sign contracts, the same may be said of the mayor, and the argument would result in showing that the council has no power to cause a contract to be executed. The signing of the contract by the clerk was but a ministerial act, involving the exercise of no discretionary power, and could be delegated. (1 Dillon on Municipal Corporations, sec. 96; *Hitchcock* v. *Galveston,* 96 U. S. 341.) In *Los Angeles Gas Co.* v. *Toberman,* 61 Cal. 191, it was said: "As the signature of contracts in writing is no part of the duties of the mayor, authority to sign comes from the council, and when that body by its order directed its clerk to sign the contract under consideration, and he signed it, it was well executed, and if otherwise made according to the charter, it is valid and binding on the city." The order designating the clerk to sign the contract was also his authority for signing it. We cannot agree with appellant that the addition to the old charter of the words "authorized thereto" embraced in the new charter has introduced a vital

difference and must necessarily mean previously "authorized thereto" by some general law, or by the provisions of the charter. We think that taking the section (207) in its entirety, and remembering that the act to be performed was but ministerial, and that the charter nowhere authorizes any officer to sign contracts for the city, and does authorize the council to designate the mayor, or some other person, it would be an unwarranted construction to adopt appellant's meaning of the section.

If by the charter the mayor was authorized to sign contracts, there might be force in the argument that "some other person authorized thereto" should also be some person having similar or previous authority. But this some other person may be some other person than an officer of the city, in which case it would be unreasonable to hold that the council should first pass an ordinance conferring the authority and thereafter make the order directing him to sign. The natural and obvious construction, it seems to us, is, that the order directing the clerk to sign for the city carries with it his authority.

The views herein expressed render it unnecessary to notice respondents' point as to the insufficiency of the complaint to entitle plaintiff to injunctive relief.

It is advised that the judgment be affirmed.

Gray, C., concurred.
Cooper, C., concurred in the conclusion.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

Angellotti, J., Shaw, J., Van Dyke, J.