[Civ. No. 4420. Fourth Dist. Jan. 15, 1952.]

THOMAS E. DAVIS, Appellant, v. CITY OF SANTA
ANA, etc., et al., Respondents.

Forgy, Reinhaus & Forgy and Mark A. Soden for Appellant.

Z. B. West, R. M. Crookshank, Harvey, Rimel & Johnston and Jack J. Rimel for Respondents.

GRIFFIN, J.— Plaintiff, on behalf of himself and other taxpayers of the city of Santa Ana, brought this action against the defendants, city of Santa Ana, a municipal corporation of the fifth class, its mayor, councilmen, city clerk and city treasurer (hereinafter referred to as defendant city), and against defendants Paul M. Johnson and associates (hereinafter referred to as the Johnsons) to enjoin the defendant city and defendants Johnson from paying or receiving any money from the city treasurer under the terms of a contract and supplemental agreement for the disposal of the city trash and garbage, and enjoining the city from selling or transferring to defendants Johnson any equipment used by said city in such operation.

In the second count of the complaint, wherein plaintiff repeats and realleges the allegations set forth in the first count, he asks that the rights of the respective parties be declared.

The complaint sets up the contract (Exhibit A) entered into on November 2, 1950 (a copy of which is incorporated therein by reference) which recites generally that:

"WHEREAS . . . the City has handled garbage and trash collections within its exterior boundaries as a corporate function and now wishes to relieve itself of said duty by granting to private persons . . . a contract for said collections and,

"WHEREAS, second parties have filed with the City their bid and proposal in writing to perform said functions for and on behalf of the City, as a private operation upon certain terms and conditions.

"Now, THEREFORE, . . . it is agreed . . .

"That the City shall grant to the second parties the right, privilege and duty to collect and dispose of all trash and garbage . . . for a period of four (4) years. . . .

"That as consideration . . . the City agrees to pay to the second parties ninety cents (90¢) per month for each water meter record. . . .

". . . the second parties shall have the right to sell or otherwise dispose of garbage collected. . . .

"The second parties further agree to purchase from the City the equipment now being used by the City in its trash and

garbage operations consisting of some ten (10) pieces of rolling stock at the Blue-Book value, or at the valuation set by a board of appraisal. . . .

"That should either party to this agreement fail or refuse to carry out the terms of this contract . . . the other party may cancel the same. . . .

"In the event of cancellation of this contract by either party, . . . the City shall have the right to repurchase from the second parties all rolling stock sold to said second parties, still in use, under the same terms and conditions as said rolling stock was sold to second parties."

On November 6, 1950, a supplemental agreement (Exhibit B) was executed by the parties, modifying the terms of the first agreement to the extent that the city would allow the Johnsons to continue storing the garbage trucks at the city yard at a fixed rate and that they would pay $100 per month to a city employee for accepting complaints regarding failure of garbage collection.

The complaint further alleges that the purported contract was entered into by the city, without notice inviting bids, and that the contract was not let to the lowest responsible bidder after notice; that the contract provides for an expenditure of city funds exceeding $1,000 and that by reason thereof the contract and supplemental agreement were illegal and void; that the city did not comply with a certain specified city ordinance No. 1296, in respect to the sale of the equipment. This ordinance, set forth in the pleadings, provides generally that when a department head determines that there is personal property in his department which has "no present or prospective use to which the city of Santa Ana may put said property" and is "surplus," he must report that fact to the city council. Reports of surplus property must be read at council meetings and the property cannot be sold until the council approves the report and declares the property surplus. The property is not to be sold if another department has a use for the personal property for a city purpose. When the council determines that sufficient surplus has accumulated it shall fix the date for the sale, which shall be at public auction for cash.

It is then alleged that since the city did not comply with the provisions of this ordinance, it had no power to sell the city-owned equipment to the Johnsons, and for this additional reason that portion of the contract relating to the sale was illegal and void.

General demurrers were filed on behalf of all defendants (except two councilmen who were not present and voting when the contracts were authorized) claiming that the complaint did not state a cause of action on either count. These demurrers were overruled. Answers were filed by the demurring defendants in which they denied generally that the contract or subsequent agreement was invalid for the reasons claimed. They set up the official minute entries of the City Council which recited that the mayor and clerk were "authorized to execute the agreement" dated November 2d, 1950, with the Johnsons, as well as the minutes of November 6, 1950, authorizing the mayor and clerk to execute the supplemental agreement. They admitted that these contracts were entered into and executed by the city "without notice inviting bids" and that the expenditures involved exceeded $1,000. They set out ordinance No. 1296 in its entirety, admitted the sale of the rolling stock equipment provided for in the contract was not made in accordance with the procedure prescribed in that ordinance; claim that the city was not required to follow such procedure; and that at the time of the execution of the contracts the city did have and still has a "prospective use" for such equipment. They deny that the contract of sale was void or illegal or in violation of law. As to the second count, they reallege the allegations set forth in their answer to the first count and deny the remaining allegations of that count. The case came on for trial. Three witnesses were sworn on behalf of plaintiff. At the conclusion of plaintiff's case defendants moved to strike all of the testimony offered by plaintiff upon the ground that the complaint did not state a cause of action, and moved for a "judgment of nonsuit" upon the "ground set forth in sec. 581 Code of Civil Procedure." The court granted defendant's motion to strike and granted a "motion for judgment on the pleadings," after stating that defendants had erroneously "entitled" it "a motion for a nonsuit."

The principal question to determine upon this appeal is whether the city was obligated, under sections 37901-37903 of the Government Code to advertise and give notice inviting bids to let the contract for disposal of rubbish and garbage to the lowest responsible bidder. Section 37902 provides that:

"When the expenditure required for a *public project* exceeds one thousand dollars ($1000.00) it shall be contracted for and let to the lowest responsible bidder after notice." (Italics ours.)

Section 37901 defines a "public project" as:

"(a) A project for the erection, improvement and repair of public buildings and works.

"(b) Work in or about streams, bays, water fronts, embankments, or other work for protection against overflow.

"(c) Street or sewer work except maintenance or repair.

"(d) Furnishing supplies or materials for any such project, including maintenance or repair of streets or sewers."

As will be noted, there is nothing in the section which states that the letting of a contract for the collection of city rubbish and garbage is a "public project." Counsel for plaintiff insists that the historical background of these sections indicates that such a contract was intended by the Legislature to be classified as a "public project," and cites Stats. 1883, chap. VI, article III, section 777, page 258. This section contained the marginal note: "Public work to be contracted for." It provided in part that:

"In the erection, improvement, and repair of all public buildings and works, in all street and sewer work, and in all work in or about streams, bays, or water fronts, or in or about embankments, or other works for protection against overflow, and in furnishing any supplies or materials for the same, when the expenditure required for the same exceeds the sum of one hundred dollars, the same shall be done by contract, and shall be let to the lowest responsible bidder, after due notice. . . ."

Also cited is the amendment to that section in Statutes 1915, chapter 663, section 1, page 1304, wherein the amount was increased to $300, and the caption or preamble in that amendment referred to contracts "for public works" in cities of the fifth class. Also cited in Statutes 1941, chapter 741, section 2, page 2260, where the amount was raised to $1,000, with a similar preamble in the title. It is therefore argued that when the Legislature used the term "public project" in section 37902, it meant "public work"; that since the collection of garbage is a governmental function (citing *Glass* v. *City of Fresno,* 17 Cal.App.2d 555, 558 [62 P.2d 765]; *Pittam* v. *City of Riverside,* 128 Cal.App. 57, 62 [16 P.2d 768]; 18 California Jurisprudence, page 1096, section 345; and 7 McQuillin, Municipal Corporations, 3d edition, page 77, section 24.242) one can assume that to perform such function constitutes the doing of work, and that the doing of that governmental work, being for a public purpose, it is, as a matter of fact and law, "a public work." In this connection plaintiff cites *McKim* v.

*Village of South Orange,* 133 N.J.L. 470 [44 A.2d 784, 786];
and *State* v. *Butler,* 178 Mo. 272 [77 S.W. 560], and relies on
these out of state cases for the proposition that a contract for
the removal of the city's garbage is a "public work" under
the statutes there involved. He also cites 35 Words and
Phrases, 435; 43 American Jurisprudence, page 744, section 3;
92 American Law Reports, 837; and 50 Corpus Juris, page
867, section 97. Therein, the above-mentioned cases are cited
as authority for this statement.

Statutes of 1949, chapter 79, section 1, page 165, codifies
section 777, *supra,* into the present code sections above indi-
cated. .Therein, the words "public work" are no longer men-
tioned. The term "public project" is used in all instances
and the new section clearly defines this term. This definition
is not inconsistent with the provisions of the original act or
the amendments thereto. The better argument would be that
the Legislature intended to remove any doubt as to the mean-
ing of the previous enactments on the subject and intended to
exclude from that definition a contract for the disposal of
garbage.

*Lelande* v. *Lowery,* 26 Cal.2d 224, 227 [157 P.2d 639, 175
A.L.R. 1109], relied upon by plaintiff, is not opposed to this
construction. Under article XI, section 11 of the California
Constitution, "Any . . . city . . . may make and enforce
within its limits all such local, police, sanitary, and other regu-
lations as are not in conflict with general laws." Section 38793
of the Government Code provides:

"In addition to other powers, the legislative body of a fifth
class City may provide for the prevention and summary re-
moval of all filth and garbage in the city."

Section 4250 of the Health and Safety Code provides:

"The legislative body of any incorporated city may contract
for the collection or disposal, or both, of garbage, . . . under
such terms and conditions as may be prescribed by the legis-
lative body of any such city by a resolution or ordinance."

The accumulation of garbage and trash within a city is
deleterious to public health and safety. ██ The collection
and disposal of garbage and trash by the city constitutes a valid
exercise of police power and a governmental function which
the city may exercise in all reasonable ways to guard the
public health. █ It may elect to collect and dispose of the
garbage itself or it may grant exclusive collection and disposal
privileges to one or more persons by contract, or it may permit
private collectors to make private contracts with private citi-

zens. The gathering of garbage and trash is considered to be a matter which public agencies are authorized to pursue by the best means in their possession to protect the public health. (*In re Santos*, 88 Cal.App. 691 [264 P. 281]; *Miller* v. *City of Palo Alto*, 208 Cal. 74 [280 P. 108]; *Manning* v. *City of Pasadena*, 58 Cal.App. 666 [209 P. 253].)

 In the absence of some specific charter or statutory requirement, municipal contracts need not be let under competitive bidding. (McQuillin, Municipal Corporations, 3d ed., vol. 10, p. 272, § 29.31.) The only statutory requirement in California brought to our attention pertaining to competitive bidding on contracts by a city of the fifth class consists of the provisions of the Government Code mentioned. It is obvious from the mere reading of these sections that not all public contracts are included, but only those which constitute ''public projects'' as that term is therein defined and limited. This point is well illustrated in the case of *Electric Light & Power Co.* v. *City of San Bernardino*, 100 Cal. 348 [34 P. 819], where the city, without following any competitive bidding procedure, entered into a contract with the plaintiff light company wherein the light company agreed to install and furnish street lighting to the city for one year at a cost of over $500. The question involved was the construction to be placed upon section 777, *supra*, which section then required competitive bidding procedure where the expenditure was to exceed $100 ''In the erection, improvement and repair of all public buildings and works, in all street and sewer work, and in all work . . . in or about embankments or other works for protection against overflow, and in furnishing any supplies or materials for the same. . . .'' The Supreme Court, in construing this section, held that the contract in question was not within the statute and that competitive bidding was not required. It said, at pages 351-352:

''Does the lighting of streets as here described come with the term 'street work', as used in the foregoing provision of the statute? . . . The provision fairly construed by all rules of construction does not bring the subject of this litigation within the term 'street work'. . . .

''There can be no question as to the sound policy of a law requiring municipal corporations to enter into contracts, for the payment of money, only after full notice and opportunity for competition; but that is not a matter for our consideration here. We must take the statute as we find it. We can neither

add to it nor subtract from it. It is our duty alone to construe it as it stands enacted.''

In *Swanton* v. *Corby*, 38 Cal.App.2d 227 [100 P.2d 1077], a sixth class city, without any competitive bidding procedure, purchased materials, labor and supplies in the open market and had constructed for the city a two-way short wave radio. The complete cost was over $900. The statute then in effect required competitive bidding procedure by sixth class cities where the expenditure exceeded $500 ''In the erection, improvement and repair of all public buildings and works. . . .'' The question on which that case turned was the construction of the phrase quoted. This court held that the erection of the radio did not constitute a public work within the meaning of the statute, and said that:

''It is well settled in California that a municipality may purchase supplies and materials and hire labor without advertising for bids if the law or charter under which it is organized and exists does not require the contract for such supplies, materials or labor to be let to the lowest bidder after advertising for bids.'' (Citing cases.) See, also, 22 Cal.Jur. p. 74, § 2; and *Matthews* v. *Town of Livermore*, 156 Cal. 294 [104 P. 303].

As pointed out by the trial judge, this attack is made purely on the question of the procedure followed, and there is no allegation of fraud or dishonesty. The question of the wisdom or discretion of the city council in awarding the contract without accepting bids is not before the court. ■ In the absence of some legislative authority indicating that such a contract as here involved comes within the definition of a ''public project,'' the courts are powerless to include it therein, no matter how reasonable plaintiff's argument of justification may seem.

■ The second question is whether ordinance No. 1296 was applicable under the facts pleaded and established. It is defendant's contention, in this respect, first, that from a mere reading of the contract here in controversy and as pleaded by plaintiff, it shows on its face that the garbage and trash collection equipment was not surplus property within the intended meaning of the ordinance; second, that the city council, which was the ultimate judge of the fact whether the equipment was or was not surplus, did not consider it to be such; and third, that since the pleadings do not allege fraud or abuse of discretion in connection with said determination, the courts are powerless to disturb such determination by that body. There is merit to the argument. Under the terms of

the ordinance in question only *surplus property* need be sold at public auction. The ordinance itself defines surplus property as property for which the city has no present or *prospective use*. As will be noted, the city council is not precluded by the ordinance from selling or disposing of *any* of its personal property without obtaining bids therefor. The provision applies only to surplus property for which the city has no present or prospective use. ■ The city council was the ultimate judge, both under the ordinance and under the statute authorizing the sale of its personal property without bid, to determine whether said property was or was not surplus and whether a sale made by it under either theory was or was not for the common benefit of the city. Such authority cannot be delegated to any other municipal officer. (19 R.C.L. p. 896, § 195, 37 Am.Jur. p. 667, § 53; *Bolton* v. *Gilleran*, 105 Cal. 244 [38 P. 881, 45 Am.St.Rep. 33] ; *Truckee & T. T. Road Co.* v. *Campbell*, 44 Cal. 89, 91.)

■ The record conclusively shows that the sale was made without resort to bid, and the equipment was never declared to be surplus property by the head of any department or by the city council. The presumption is that the city council made a determination that it was not surplus; that it should be sold; and that the contemplated sale was for the benefit of the city. (*Truckee & T. T. Road Co.* v. *Campbell, supra*; Code Civ. Proc., § 1963, subds. 15 and 33.)

In *Southlands Company* v. *City of San Diego*, 211 Cal. 646 [297 P. 521], our Supreme Court held that where the city council had the power to exercise a discretion as to whether the building of a bridge or causeway was reasonably necessary in the construction of a highway, in the absence of fraud, its finding that such a bridge was necessary was conclusive and not subject to review. (See, also, *In re Sumida*, 177 Cal. 388 [170 P. 823] ; *Odd Fellows' Cemetery Assn.* v. *San Francisco*, 140 Cal. 226 [73 P. 987].) The discretionary powers of municipal authorities will not be interfered with in a suit by a taxpayer for an injunction in the absence of fraud or palpable abuse. Matters in which questions as to judgment, wisdom or policy alone are involved are not subject to control by injunction. (64 C.J.S. p. 958, § 2142; 64 C.J.S. p. 969, § 2147c.)

*California Reduction Co.* v. *Sanitary Reduction Works of San Francisco*, 126 F. 29, involved a suit in equity by a third party (as here) to obtain an injunction against defendant company testing the validity of an exclusive con-

tract for the removal of garbage in the city of San Francisco, for a period of 50 years. The court held that since the Consolidation Act (Stats. 1863, p. 540, chap. 352) empowered the board of supervisors "by regulation or order" to provide for the prevention and summary removal of all nuisances, etc. the board, having power under such provisions, to itself regulate the removal and disposition of all garbage and refuse matter, the municipality had the power to contract, with others for such removal or disposition, and that an order granting an exclusive franchise or privilege to a person to receive and destroy the garbage and refuse collected in the city for a term of 50 years was within the authority granted, as well as within the police power of the state. It then held that the validity of the grant of such privilege, which amounts to a contract, and under which the grantee is acting, cannot be collaterally attacked by a private party in a suit in equity on the ground of *irregularity* in the exercise of its power by the municipality, nor because of the alleged failure of the grantee to perform the conditions imposed, the nonperformance of which it was provided would work a forfeiture, such matters being determined only at suit of the granting authority. Although defendants do not raise the point on this appeal, an action to test the question as to whether a city council errs in exercising its rightful authority in awarding an exclusive franchise for the removal of garbage must be by quo warranto. (*Gurtz v. City of San Bruno*, 8 Cal.App.2d 399 [48 P.2d 142].) Continuing further, the court, in the California Reduction Company case, then said, at page 38:

"The question as to the reasonableness of granting the exclusive franchise for 50 years is one upon which there may be honest differences of opinion. Courts cannot, in the determination of this question, run a race of opinion upon points of reason and expediency with the law-making power. No iron-clad rule can be laid down to determine where the discretion of the board ceases and where the power and authority of the court to declare the action of the board unreasonable begins. The border line must be ascertained by the facts, conditions, and circumstances surrounding the subject-matter in every particular case. . . . It was authorized by the laws of the state to make the contract in question. It was required to act with sound discretion as to the methods and terms. With the honest and reasonable exercise of this authority a court has no right to interfere, although the

board may not have chosen the best method or made the most advantageous contract in relation to the subject-matter. It is only in cases where it clearly appears that the board has exceeded its authority, or acted arbitrarily, oppressively, and unjustly in the exercise of its discretion, that a court is called upon to act.''

In the instant case it appears that the contract carried a cancellation clause permitting the city to cancel the contract by giving 30 days' written notice if the service was not satisfactory. It was entered into in November, 1950, at which time the existing conflict with Korea and Red China was in progress. The city council might well have recognized that a shortage of critical materials, such as specialized garbage and trash equipment existed, and that if it did not provide for a means of collecting garbage itself in case the service should prove to be unsatisfactory and the contract was cancelled, it would be derelict in its duty. It clearly appears from the agreement itself that there might well have been a prospective use for the equipment by the city. Under such circumstances the city council was justified in not classifying it as surplus.

Defendants present the additional argument that the city council could not, by ordinance, limit, restrict, nor otherwise divest itself of the discretionary power vested in it by the general law to dispose of city-owned property. McQuillin, Municipal Corporations, volume 10, 3d edition, § 29.37, page 284, recites:

''Where the statutes governing a municipality do not require that its contracts be let under competitive bidding but the manner of awarding them is left to the discretion of the mayor and council, it is held that such officials cannot restrict their future conduct· nor limit the discretion vested in them by passing an ordinance requiring competitive bidding for subsequent contracts. Such ordinance will not prevent them from contracting in good faith in the future in some other manner.'' (Citing cases.)

However, in connection with this statement there is a statement which reads:

''While there is authority which apparently points to a contrary conclusion, it has frequently been held that although neither charter nor applicable statute prescribes competitive bidding, or a method for letting contracts, an ordinance providing for such bidding must be observed, other-

wise the contract cannot be enforced against the municipality.''

Several Missouri and Pennsylvania cases are cited in support of this latter rule. (See *Kirksville* v. *Harrington,* 225 Mo.App. 309 [35 S.W.2d 614]; *Flynn* v. *Philadelphia,* 258 Pa. 355 [102 A. 24]; *Bunker* v. *City of Hutchison,* 74 Kan. 651 [87 P. 884]; and *Cimarron Utilities Co.* v. *Guymon,* 171 Okla. 344 [43 P.2d 143].)

Plaintiff concedes under the general rule that the city council was given power to purchase and sell personal property, but argues that any such sale must be for the ''benefit of the City'' and that since the city council attempted to set up a standard procedure or policy relating to the selling of its property by ordinance, it was bound to follow that procedure. In this connection it is also argued that ordinances passed by a city council, within the scope of its authority, have the same force and effect within the limits of the city as a statute has throughout the state, citing *Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 370 [203 P.2d 37]; *Monterey Club* v. *Superior Court,* 48 Cal.App.2d 131, 137 [119 P.2d 349]; and *Marculescu* v. *City Planning Com.,* 7 Cal.App.2d 371, 373 [46 P.2d 308].

It is also contended by plaintiff that in executing the contract pertaining to the sale of the equipment, the city council was acting in an *administrative* capacity; that when it adopted the ordinance, it was acting in a *legislative* capacity; that when acting in an administrative capacity, the city council was bound by those ordinances passed when acting in a legislative capacity and must conform to the procedure outlined therein. There is authority for this latter statement in *Hopping* v. *City Council of the City of Richmond,* 170 Cal. 605, 615 [150 P. 977]; *Earl* v. *Bowen,* 146 Cal. 754, 761 [81 P. 133]; and *Strauch* v. *San Mateo Junior College Dist.,* 104 Cal.App. 462, 464 [286 P. 173].

There is neither pleading nor showing made by the plaintiff that the actions of the city council were not made ''for the benefit of the City.''

As distinguished from a charter city, the general basic law of a fifth class city is to be found in the Constitution and in the laws and codes adopted by the state Legislature. Government Code, sections 37350, 37351, provide that:

''A city may purchase . . . real and personal property and control and dispose of it for the common benefit,'' and ''The legislative body may purchase . . . such personal prop-

erty . . . as is necessary or proper for municipal purposes. It may control, dispose of, and convey such property for the benefit of the city. . . .''

It therefore appears that the legislative body of the city is vested with the free and unrestricted discretionary power to determine what personal property shall be disposed of, and when and how that disposition shall be made. The only restriction imposed by the general basic law is that such disposition shall be for the benefit of the city and its constituents. The basic law does not require the city to follow competitive bidding procedure. It does not require the city council to establish any rules, regulations or procedure for the disposal of personal property as a condition precedent to the exercise of the power of disposal.

While it may appear that there are several California cases affirming the rule that the city council cannot, by adopting an ordinance, divest itself of, or restrict itself in, the free exercise of the broad discretionary power and duty which the general basic law has imposed upon and delegated to the city council (*Briare* v. *Matthews,* 202 Cal. 1 [258 P. 939] ; *Higgins* v. *Cole,* 100 Cal. 260 [34 P. 678] ; and *Thompson* v. *Board of Trustees,* 144 Cal. 281 [77 P. 951]) yet some exception seems to be indicated when such ordinance applies to acts which may be classified as administrative functions. (See 18 Cal.Jur. p. 893, §§ 188-189, and cases cited.) Since we have concluded that the city council was within its rights in disposing of the trucks and equipment under the first theory, it becomes unnecessary to determine this last question.

It should be kept in mind that we are here dealing with a contract for the collection and disposal of garbage of a city. The city council has the responsibility of protecting the health of the inhabitants of the city by collecting and disposing of such garbage, either with its own equipment or by letting contracts for that purpose. The agreement for the conditional sale of the equipment to the defendants Johnson was a part of the consideration of the contract and was an integral part of the agreement for, in all probability, without the use of the equipment, the Johnsons would have been unable to obtain other equipment or perform their agreement. To subject such specialized equipment to a forced sale, to the highest bidder, for cash, may well have defeated the purpose of the agreement, and may have created a serious

684

unhealthy condition in the city. We conclude that in the absence of some pleading or showing of fraud or that the city council exceeded its authority, acted arbitrarily, oppressively and unjustly in the exercise of its discretion, the courts should not interfere with the discretionary power vested in the city council in this respect.

Plaintiff next contends that since the prayer of the complaint also seeks declaratory relief, based on the same allegations heretofore mentioned, the court erred in its ruling ordering judgment for defendants on the pleadings. He cites such cases as *Essick* v. *City of Los Angeles*, 34 Cal. 2d 614, 624 [213 P.2d 492]; and *Maguire* v. *Hibernia Sav. & Loan Society*, 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062].

It is true that a complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and requests that these rights and duties be adjudged by the court. (*Maguire* v. *Hibernia Sav. & Loan Society, supra.*) However, the pleadings must set forth facts which show an actual controversy. Under the statement of facts here presented the only controversy claimed is whether the contract for the handling of garbage was void because bids were not called for, and whether the conditional agreement to sell the equipment was void because such sale was not made at public auction. These questions were fully presented by the pleadings and plaintiff has suffered an adverse ruling on these subjects. He is not prejudiced by the ruling of the trial court which, in effect, denies declaratory relief. No abuse of discretion appears in the action of the court in refusing to entertain such complaint. (*Orloff* v. *Metropolitan Trust Co.*, 17 Cal.2d 484, 489 [110 P.2d 396]; *Ermolieff* v. *R.K.O. Radio Pictures*, 19 Cal.2d 543, 549 [122 P.2d 3]; *Chas. L. Harney, Inc.* v. *Contractors' State License Board*, (Cal.App.)* 238 P.2d 637; 16 Am.Jur. p. 288, § 14; Code Civ. Proc., § 1061; *City of Alturas* v. *Gloster*, 16 Cal.2d 46, 48 [104 P.2d 810].)

Complaint is made that the court's ruling on the demurrer that the complaint stated a cause of action was inconsistent with its ruling granting a judgment on the pleadings. When a general demurrer is incorrectly overruled and this fact is called to the attention of the trial court by presentation of additional authorities, as was done here, the court

*A hearing was granted by the Supreme Court on February 7, 1952.

is authorized to grant a judgment on the pleadings, if proper. In such case the ruling on the demurrer may be deemed an irregularity. (*Electric Light & Power Co.* v. *City of San Bernardino,* 100 Cal. 348 [34 P. 819]; *De Courcey* v. *Cox,* 94 Cal. 665 [30 P. 95]; 21 Cal.Jur. 241, § 166.)

The final complaint is that the court committed prejudicial error in granting a judgment on the pleadings when the motion before the court was for a "judgment of nonsuit" under "Section 581 C. C. P." because "the plaintiff has not sufficiently proved his case." The court endeavored to account for this discrepancy upon the theory that defendants erroneously denominated the motion a motion for nonsuit. The language of the motion does not so indicate. The only question is whether plaintiff suffered prejudicial error by the judgment entered.

██ A motion by defendant for judgment on the pleadings operates as a general demurrer to the complaint, and the averments of the complaint, for the purpose of the motion, must be treated as true, and the motion should be granted where no material issue is joined which it is necessary to prove. (21 Cal.Jur. 234, § 163.) A motion for nonsuit should be made as provided in section 581, Code of Civil Procedure, and if granted, such judgment operates as an adjudication upon the merits unless the court, in its order for judgment, otherwise specifies.

██ The city engineer testified that actually, 13 trucks were transferred to the Johnsons under the contract; that after the letting of the contract the sanitary department, he "imagined . . . would have no use for them" except for two or three that might be used for "stand-by purposes"; and that if the contract with the Johnsons were terminated, the city would have immediate need for the trucks. Thereafter, the court sustained an objection to an offer of plaintiff to prove that the city would suffer damage by the sale of the trucks to the Johnsons because they could have been sold for more if sold at public auction to the highest bidder. Thereafter, plaintiff rested his case. A motion to strike all of the evidence was granted upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The motion for nonsuit followed. The judgment on the pleadings was ordered. For the reasons stated, the motion to strike the testimony was proper since there was no allegation of fraud in connection with the transaction, and for the further reason that there was no showing that the city council acted illegally,

arbitrarily, or that it abused the discretionary power with which it was vested.

If the judgment, as entered, may be considered as a ruling on the motion for nonsuit it did, in effect, operate as an order granting a dismissal of plaintiff's complaint, and since it did not otherwise specify, it operated as an adjudication upon the merits. The same result would have obtained had the motion been for a judgment on the pleadings. This court might well have ordered that the trial court enter a judgment on the pleadings. (*Electric Light & Power Co.* v. *City of San Bernardino, supra.*) We conclude that plaintiff was not prejudicially injured by the irregularity mentioned.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 13, 1952. Schauer, J., was of the opinion that the petition should be granted.