OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

| | |
|---|---|
| OPINION | : |
| | :     No. 88-1101 |
| of | : |
| | :     <u>JUNE 29, 1989</u> |
| JOHN K. VAN DE KAMP | : |
| Attorney General | : |
| | : |
| ANTHONY S. DaVIGO | : |
| Deputy Attorney General | : |
| | : |

_____

THE HONORABLE DEVON L. WORKMAN, COUNTY COUNSEL, COUNTY OF GLENN, has requested an opinion on the following question:

May a general law county adopt a procedure governing the purchase of supplies and equipment which provides to vendors within the county a five percent preference?

CONCLUSION

With respect to the purchase of ordinary supplies for which a county is required by law to advertise for bids on an annual basis, a general law county which does not employ a purchasing agent may not adopt a procedure which provides to vendors within the county a five percent preference.

With respect to other supplies, or in a general law county which employs a purchasing agent, the county may, subject to any provisions of law governing the purchase of particular goods or articles, adopt a procedure which provides to vendors within the county a five percent preference.

ANALYSIS

We are asked whether a general law county, as part of its endeavor to develop economically, may grant a five percent preference to "vendors within the county," however that term might be specifically defined. Unless limited by statute, charter or ordinance, a governmental agency may contract without competitive bidding. (*Davis* v. *City of Santa Ana* (1952) 108 Cal.App.2d 669, 677, 678; *Swanton* v. *Corby* (1940) 38 Cal.App.2d 227, 229; 38 Ops.Cal.Atty.Gen. 92, 93 (1961).)

Section 54202[1] provides for the adoption of policies and procedures for the purchase of supplies:

"Every local agency shall adopt policies and procedures, including bidding regulations, governing purchases of supplies and equipment by the local agency. Purchases of supplies and equipment by the local agency shall be in accordance with said duly adopted policies and in accordance with all provisions of law governing same. No policy, procedure, or regulation shall be adopted which is inconsistent or in conflict with statute."[2]

It will be assumed for purposes of this discussion that the county has adopted a purchasing policy which requires competitive bidding in connection with purchases of supplies and materials, and which incorporates the proposed preference. We first consider the statutory constraints with which any such policy may not conflict. Section 25480 provides in part as follows:

"In any county which does not employ a purchasing agent the board of supervisors shall annually or at such lesser intervals as it deems appropriate advertise for at least 10 days in a newspaper of general circulation in the county for sealed bids for furnishing the county with stationery, clothing, bedding, groceries, provisions, drugs, medicines, and all other supplies. If there is no newspaper published in the county, notices calling for bids shall be posted in three public places in the county." (Emphasis added.)

Section 25481 provides:

"All bids shall be on a schedule prepared by the clerk of the board showing all articles needed in the several offices and departments and shall state separately the price of each article to be furnished. Any person may bid upon any article separately." (Emphasis added.)

Finally, section 25482 provides:

"In considering the bids, the board may accept or reject all or any of them, or may accept or reject a part of any bid, preference being given, however, to the lowest responsible bidder." (Emphasis added.)

The latter section requires that preference be given to the lowest responsible bidder. This construction gives significance to the italicized words and is consistent with the interpretive precept that every word, phrase and provision employed in a statute is intended to have meaning and to perform a useful function. (Cf. *White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 681; 68 Ops.Cal.Atty.Gen. 324, 327 (1985).) It is also consistent with the clearly mandatory terminology of sections 25480 and 25481 immediately preceding.

Further, the preference does not permit the application of another inconsistent one. This follows from the nature of a preference, being a choice or estimation above another, and consisting of a higher valuation or desirability. (Cf. Webster's Third New Internat. Dict. (1961) p. 1787; and see *MacNabb* v. *Sheridan* (1942) 181 Md. 245, 29 A.2d 271, 272.) Accordingly, this

---

1. Section references are to the Government Code.

2. The term "local agency" includes counties. (§ 54201.)

office has determined that where a preference is required to be given by law to the lowest responsible bidder, a preference in favor of local vendors is plainly invalid. (64 Ops.Cal.Atty.Gen. 670 (1981); 48 Ops.Cal.Atty.Gen. 11 (1966).) Consequently, in a county which does not employ a purchasing agent, a preference may not be given to local vendors for the purchase of stationery, clothing, bedding, groceries, provisions, drugs, medicines, "and all other supplies."

Where, on the other hand, a purchasing agent has been employed (§ 25501), section 25502 pertains:

> "Whenever the board of supervisors employs a purchasing agent it shall not be necessary for it to advertise for bids for furnishing county supplies as required in Section 25480, with the exception of advertising."

Section 25508 provides:

> "The board of supervisors may by ordinance establish rules and regulations requiring the purchasing agent to obtain quotations by the use of formal or informal bids, in connection with the purchase of materials, supplies, furnishings, equipment, livestock and other personal property which such purchasing agent is authorized to purchase for the county and its offices. The purchasing agent shall comply with such rules and regulations."

Hence, if a county employs a purchasing agent, the supervisors <u>may</u> require the agent "to obtain quotations by the use of formal or informal bids." Assuming that the supervisors have so required, and that such requirement necessarily implies a duty to select the lowest responsible bid, the question supposes that the supervisors have nevertheless provided, by way of exception or limitation, for a five percent local vendor preference. Inasmuch as the board is clearly not required to impose such a duty, we perceive no barrier to its imposition subject to condition or limitation. In the absence of any other statutory or constitutional constraint, the county may permit such a limitation.[3]

Whether or not a purchasing agent has been employed, section 25482 would not apply to the purchase of properties not designated in section 25480 or encompassed within its reference to "all other supplies." The latter phrase is limited by the other provisions of the section in which it is found. Specifically, it refers to those supplies for which the county is required by that section to advertise on at least an annual basis; the bid which is accepted as the result of that advertising comprises the maximum price for which the supplies may be purchased by the county or any county officer during the ensuing period. (See § 25483; 27 Ops.Cal.Atty.Gen. 325, 326 (1956).) These supplies have been referred to as "ordinary county supplies" as distinguished from special purchases for particular projects such as the construction of a highway, the furnishing of a courthouse, or the purchase of buses for use in the operation of a public utility. (*H. Cowell Lime & Cement Co.* v. *Williams* (1920) 182 Cal. 691, 696.) With regard to articles not falling within the purview of section 25480, and except as may be otherwise statutorily (e.g., 27 Ops.Cal.Atty.Gen., *supra* -- automobiles) or constitutionally constrained, we find no impediment to the local vendor preference. It is assumed that any such preference would be adopted pursuant to the procedure prescribed in section 54202, *supra*. The reference in that section to the purchase of "supplies and equipment" is not contextually limited as in the case of section 25480, but is of a much broader order. (38 Ops.Cal.Atty.Gen. 92, 95-97 (1961).)

---

3. Our letter opinion dated May 27, 1968, IL 68-129, is disapproved to the extent of inconsistency herewith.

Where a preference is not statutorily proscribed, as set forth in the foregoing analysis, we must nevertheless examine any constitutional impediment which might impact the validity of the policy.

The California Court of Appeal, in *Bethlehem Steel Corp.* v. *Bd. of Com.* (1969) 276 Cal.App.2d 221, held unconstitutional the California Buy American Act (§§ 4300-4305) which requires that contracts for the construction of public works or the purchase of materials for public use be awarded only to persons who will agree to use or supply materials, which have been manufactured in the United States, substantially all from materials produced in the United States. The Act, effectively placing an embargo on foreign products, was perceived by the court as a usurpation of the inherent, exclusive, and plenary federal power to conduct foreign trade policy. (*Id.* at 224-225.)  In such a case, countervailing state policies are wholly irrelevant to judicial inquiry. (*Id.* at 225.)

The following year, this office concluded that the California Preference Law (§§ 4330-4334) "affects foreign commerce as much as did the California Buy American Act," and required a similar result. (53 Ops.Cal.Atty.Gen. 72, 73 (1970).) Specifically, section 4331 provides:

> "Price, fitness and quality being equal, any body, officer, or other person charged with the purchase, or permitted or authorized to purchase supplies for the use of the State, or of any of its institutions or offices, or for the use of any county or city shall always prefer supplies grown, manufactured, or produced in the State, and shall next prefer supplies partially manufactured, grown, or produced in the State."

We have no occasion for purposes of this analysis to reconsider that opinion in light of the more recent cases discussed below, establishing the prerogative of a government to act as a market participant.  The distinction may be noted, however, that none of those cases involved the regulation by a state not only of its own purchases but also of those of every city and county within the state. It has been argued that the distinction is both analytical and quantitative, rendering the state a market regulator.  (Cf. *W.C.M. Window Co., Inc.* v. *Bernardi* (1984) 730 F.2d 486, 495-496.)

The principles underlying the applicability of the Commerce Clause in such cases are found in *Hughes* v. *Alexandria Scrap* (1976) 426 U.S. 794, concerning a Maryland program designed to remove abandoned automobiles from the state's roadways.  A bounty was offered for every "hulk" converted into scrap.  More exacting documentation requirements were imposed on out-of-state than in-state processors, making it less remunerative for suppliers to transfer vehicles outside Maryland.  The court held that "Maryland has not sought to prohibit the flow of hulks, or to regulate the conditions under which it may occur.  Instead, it has entered into the market itself to bid up their price"  (*id.* at 806), "as a purchaser, in effect, of a potential article of interstate commerce," and has restricted "its trade to its own citizens or businesses within the state." (*Id.* at 808.)  As market <u>participant</u> rather than a market <u>regulator</u>, the state required no independent justification for its action. (*Id.* at 809.) "Nothing in the purposes animating the Commerce Clause prohibits a state in the absence of congressional action, from participating in the market and exercising the right to favor its own citizens over others." (*Id.* at 810.)

In *Reeves, Inc.* v. *Stake* (1980) 447 U.S. 429, the court held that the policy of the South Dakota Cement Commission did not violate the Commerce Clause.  Due to a shortage of cement, the Commission had adopted a policy confining the sale of output by a state-owned and operated plant to the residents of that state, causing an out-of-state distributor of concrete, which had

depended upon the purchase of cement from the plant, to cut its production substantially. The court concluded that the state had simply acted in a proprietary capacity (*id.* at 433):

> "[T]he Commerce Clause responds principally to state taxes and regulatory measures impeding free private trade in the national marketplace . . . There is no indication of a constitutional plan to limit the ability of the states themselves to operate freely in the free market." (*Id.* at 437.)

In footnote 9 (*id.* at 437-438) the court made the following observation:

> ". . . In *American Yearbook Co.* v. *Askew*, 339 F.Supp. 719 (MD Fla. 1972), a three-judge District Court upheld a Florida statute requiring the State to obtain needed printing services from in-state shops. It reasoned that `state proprietary functions' are exempt from Commerce Clause scrutiny. *Id.*, at 725. This Court affirmed summarily. 409 U.S. 904 (1972). . . .

> "One other case merits comment. In *Bethlehem Steel Corp.* v. *Board of Commissioners*, 276 Cal.App.2d 221, 80 Cal.Rptr. 800 (1969), the court struck down a California statute requiring the State to contract only with persons who promised to use or supply materials produced in the United States. In Opinion No. 69-253 Op. Cal. Atty. Gen. 72 (1970), the State's Attorney General reasoned that *Bethlehem Steel* similarly prohibited, under the `foreign commerce' Clause, statutes giving a preference to California-produced goods. We have no occasion to explore the limits imposed on state proprietary actions by the `foreign commerce' Clause or the constitutionality of `Buy American' legislation. Compare *Bethlehem Steel Corp.*, *supra*, with *K.S.B. Technical Sales Corp.* v. *North Jersey Dist. Water Supply Comm'n*, 75 N.J. 272, 381 A.2d 774 (1977). We note, however, that Commerce Clause scrutiny may well be more rigorous when a restraint on foreign commerce is alleged. See *Japan Line, Ltd.* v . *County of Los Angeles*, 441 U.S. 434 (1979)."

Finally, in *White* v. *Massachusetts Council of Construction Employers, Inc.* (1983) 460 U.S. 204, the executive order of the Mayor of Boston, requiring that at least 50 percent of all jobs on construction projects funded in whole or in part by city funds be filled by city residents, was held immune from the Commerce Clause because the city was acting as a market participant rather than as a market regulator.

Unlike the participant-regulator distinction pertinent under the Commerce Clause, the Privileges and Immunities Clause imposes a direct restraint on state action in the interests of interstate harmony. Article IV, section 2, clause 1, of the United States Constitution provides that "[t]he Citizens of each state shall be entitled to all Privileges and Immunities of Citizens in the several States." The application of this clause to a certain claim of discrimination against out-of-state residents must be based upon an underlying determination that the action or policy complained of burdens one of those privileges and immunities protected by the clause. In *Baldwin* v. *Montana Fish and Game Com.* (1978) 436 U.S. 371, 383, the court explained:

> "Some distinctions between residents and nonresidents merely reflect the fact that this is a Nation composed of individual States, and are permitted; other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single Union of those States. Only with respect to those `privileges' and `immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally."

Consequently, it must be determined whether an out-of-state vendor's interest in contracting with the county for the sale of supplies and equipment is sufficiently "fundamental" to the promotion of interstate harmony so as to "fall within the purview of the Privileges and Immunities Clause." (*Id.* at 388.)

In *United Building & Construction Trades Council etc.* v. *Mayor etc. of Camden* (1984) 465 U.S. 208, the City of Camden had adopted an ordinance requiring that at least 40 percent of the employees of contractors working on city construction projects be residents of that city. The court observed that the expenditure by the city of its own funds was certainly a factor -- perhaps the crucial factor -- to be considered in evaluating whether the effort to bias private employment decisions in favor of its residents violated the Privileges and Immunities Clause, but did not remove the ordinance completely from its purview. (*Id.* at 221.) The court held that the opportunity to seek employment with such private employers is "sufficiently basic to the livelihood of the Nation" as to fall within the clause. (*Ibid.*)

The determination that the city's policy discriminated against a protected privilege does not, in itself, offend the privileges and immunities clause. Discrimination against citizens of other states is not precluded where there is a "substantial reason" for the difference in treatment. As part of any such justification, nonresidents must be shown to "constitute a peculiar source of the evil at which the statute is aimed." (*Id.* at 222.) Finally, every such inquiry must be conducted with due regard for the principle that a state should have considerable leeway in analyzing local evils and in prescribing appropriate cures, particularly where it is merely setting conditions on the expenditure of funds it controls. (*Id.* at 222-223.)

We do not reach this second inquiry, nor do we have an adequate factual basis for doing so. We do not find, in the first instance, that the policy in question discriminates against a protected privilege, or, more specifically, that the interests of an out-of-state vendor in contracting with the county for the sale of supplies is similarly fundamental to interstate harmony, as was the opportunity at issue in *United Building* to seek employment with private employers on publicly funded construction projects.

Again, the fact that the county is expending its own funds "is certainly a factor -- perhaps the crucial factor -- to be considered" in evaluating whether the discriminatory preference violates the clause. More importantly, while the pursuit of a common calling is one of the most fundamental of those privileges protected by the clause (*id.* at 219), and while the freedom of contract is clearly one of the liberties protected by the Fourteenth Amendment (*Allgeyer* v. *Louisiana* (1896) 165 U.S. 578), the opportunity to be employed by or to contract with the government is of a different order. Neither is a fundamental interest "explicitly or implicitly guaranteed by the Constitution." (Cf. *San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1, 33-34; *D'Amico* v. *Bd. of Med. Examiners* (1974) 11 Cal.3d 1, 18.) It has been held, accordingly, that there is no fundamental right to government employment for purposes of the Equal Protection Clause. (*Massachusetts Bd. of Ret.* v. *Murgia* (1976) 427 U.S. 307, 313; and cf. *McCarthy* v. *Philadelphia Civ. Serv. Com.* (1976) 424 U.S. 645, rejecting a challenge based on the due process and equal protection clauses of the Fourteenth Amendment, and the right of interstate travel, to a city residency requirement for municipal employees.) It has also been held that no one has a vested right in public employment except insofar as the right is conferred by statute or other valid regulation. (*Butterworth* v. *Boyd* (1938) 12 Cal.2d 140, 150; *Payne* v. *State Personnel Board* (1958) 162 Cal.App.2d 679, 681; 72 Ops.Cal.Atty.Gen. 1, 6 (1989); 65 Ops.Cal.Atty.Gen. 475, 480 (1982).) Consequently, the policy in question does not, in our view, offend the Privileges and Immunities Clause.

Finally, in the absence of a fundamental right or of any suggestion of a suspect classification which would invite a stricter scrutiny, the equal protection clause of the Fourteenth Amendment requires only that a classification bear some rational relationship to a legitimate governmental purpose. (*Schwalbe* v. *Jones* (1976) 16 Cal.3d 514, 517-518; *Dandridge* v. *Williams* (1970) 397 U.S. 471, 485; 62 Ops.Cal.Atty.Gen. 180, 182 (1979).) Here, the classification between vendors within and those without the county is rationally related to the legitimate governmental purpose of economic development. (Compare, e.g., governmental purposes declared in sections 4531 and 7081 with attendant preferred classes established in sections 4533 and 7095, respectively.)

Accordingly, with respect to supplies not subject to section 25482, or in a general law county which employs a purchasing agent, the county may, in accordance with section 54202, and subject to any provisions of law governing the purchase of particular goods or articles, adopt a procedure which provides to vendors within the county a five percent preference.

\* \* \* \* \*